HULL and another, Plaintiffs, vs. PFISTER & VOGEL LEATHER COMPANY, Defendant. [Two appeals.]

*September 11—October 8, 1940.*

654

656

658

659

660

For the plaintiffs there was a brief by *Wood, Warner & Tyrrell,* attorneys, and *Kenneth F. Webster* of counsel, all of Milwaukee, and oral argument by *Edgar L. Wood.*

For the defendant there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Chas. B. Quarles, Malcolm K. Whyte,* and *L. S. Clemons* of counsel, all of Milwaukee, and oral argument by *Mr. Chas. B. Quarles* and *Mr. Clemons.*

MARTIN, J. The plaintiffs-appellants contend that the finding that "The management of the defendant has at all times proceeded with the liquidation in good faith and as rapidly as possible without undue sacrifice or waste and with the intent and purpose to complete the same as expeditiously as reasonably possible and at no time has the intent to proceed to a complete and final liquidation been abandoned," is against the great weight and clear preponderance of the evidence and the inferences which must necessarily be drawn therefrom. Also that the finding that "All parties in interest have at all times considered and treated the defendant as being in complete liquidation and all action which has been taken has been consistent therewith," is against the great weight and clear preponderance of the evidence and the inferences which must necessarily be drawn therefrom. The plaintiffs-appellants further contend that the court erred in its conclusions of law in paragraphs 1, 2, 3, 4, and 5, set out in the foregoing statement.

The defendant-appellant contends that the court erred in holding that after the preferred and common stockholders

had received the par or declared value of their shares, then to the extent that there might be net assets (at actual cash value) in excess of the total liabilities of the defendant, including its capital stock, such net assets should be applied toward accumulated and unpaid dividends on the preferred stock and toward the payment of an amount equal to five per cent of the par value of such preferred stock. In all other respects the defendant-appellant contends that the judgment should be affirmed. In this connection defendant's contention is that accumulated dividends and premiums on preferred stock are payable only out of net profits and that contributed surplus does not constitute net profits.

As to the plaintiffs' contentions, with reference to the two findings quoted above, we conclude that the findings in the respect indicated are fully sustained by the stipulated facts and the uncontradicted evidence. It is the function of the trial court to draw such inferences from the established facts as is deemed proper, and this court is not at liberty to disturb same unless they are against the great weight and clear preponderance of the evidence. It will serve no useful purpose to discuss the stipulated facts. They fully sustain the findings and the findings impel the conclusions of law except in the particular instant hereinafter indicated.

There is no merit in plaintiffs' contention that defendant corporation is not in liquidation so as to affect or divest the rights of the preferred stockholders to cumulative dividends which accrued since May 31, 1923, that is, the date on which the last regular dividend was paid to preferred stockholders, since which time the company has had no surplus resulting from earnings. The surplus which resulted through the amendment of defendant's articles changing its common stock from 80,000 shares of the par value of $100 each to the same number of shares of the par value of $10 each and the later amendment changing the common stock to no par value

having a declared value of $10 per share did not create a surplus from earnings, though it did result in eliminating the large deficit as of December 31, 1927, and in creating a large surplus. This surplus was designated on the company's balance sheets at all times as "capital surplus."

On February 13, 1931, the company through its president gave notice of the intention to liquidate to all its preferred and common stockholders. With this notice was inclosed a notice of the annual meeting to be held on February 24, 1931. There was a large attendance of both classes of stockholders at this meeting. It appears from the stipulated facts that at this meeting the company president made a very full report to the stockholders, represented in person or by proxy, of the company's financial condition and the general business condition. He reported that tanning operations were discontinued on September 1, 1930. We do not deem it necessary to go into detail as to the contents of the president's report to the stockholders. It did recommend that the company liquidate, and that the company had been advised by its attorney that the cumulated dividends on preferred stock as well as the premiums on said stock could be paid to the holders only to the extent that there were profits from which such dividends and premiums could be paid. It appears. that a motion was duly made and seconded that the president's report be accepted and placed on file.

Preferred stockholders have participated in many corporate actions in connection with the liquidation, and since 1936 the management of the corporation has been in their hands. The precise issue here is the rights of preferred stockholders to accumulated dividends, the company being in liquidation. In this connection it is important to note the provisions of paragraphs (a) and (e) of article IV of the defendant's charter quoted in the statement preceding this opinion. There is clearly a distinction between the situations referred to in said paragraphs. Paragraph (e) relates to the

rights of preferred stockholders in case of the company's liquidation, dissolution, or winding up.

In 13 Am. Jur. p. 317, § 198, it is stated:

"In the determination of who is entitled to the funds resulting from a reduction of stock, it must be borne in mind that such funds represent capital and not profits. Accordingly, it has been held that the surplus capital which remains upon a reduction of capital stock because of business losses cannot be used to satisfy the claims of preferred stockholders to arrears of cumulative dividends; but that such surplus must be distributed ratably among the common and preferred stockholders in the ratio in which their respective holdings have been reduced."

In the same volume at page 658, section 663, under the heading "Surplus arising from reduction of capital stock," it is stated:

"A surplus arising from lawful reduction of the capital stock of a corporation, if available at all for distribution, is generally distributable as capital assets; such surplus cannot be regarded as profits arising from its business, subject to appropriation in satisfaction of dividends due and unpaid to preferred stockholders under an agreement that they shall be paid a fixed annual dividend out of the surplus profits arising from the business of the corporation. There is authority for a different view with respect to earnings which accrue after an impairment of the capital stock and cannot be paid out as dividends prior to its lawful reduction to cover such impairment. When the reduction takes place, such earnings, it is held, become a part of the earned surplus of the corporation and are available for payment of dividends. Even though the surplus arising from the lawful reduction of capital stock is available for dividend purposes and may lawfully be distributed as such, payment of dividends therefrom is properly refused where it would result in impairment of capital."

*Roberts v. Roberts-Wicks Co.* 184 N. Y. 257, 77 N. E. 13, is directly in point. At page 265 the court says:

"When the defendant's directors met, in December, 1904, to act upon the question of dividends, their duty was, in

dividing *the surplus profits,* to apply them, in first order, to the satisfaction of the debt to the preferred stockholders for arrears of dividends on the whole number of their shares, which were outstanding during the three years prior to July, 1904, *before the capital stock was reduced.* For the purpose of such a dividend, however, only such surplus as represented the profits of the business could, legally, be availed of, and this brings us to consider the question of the disposition of the *surplus of capital,* left upon the reduction of the capital stock, which the appellant claims to be equivalent to surplus profits and, hence, to be applicable upon the company's debt to the preferred stockholders for arrears of dividends. As it has been stated, the capital of the defendant had become impaired, by June, 1904, to the extent of $90,861.85, and this necessitated the reduction as then effected. The reduction to $200,000, thus, left the sum of $9,138.15, which was an excess, *or surplus, of capital.* Whether it consisted in funds, or in property, we are not informed and it is not material to our consideration. We may assume that the directors could have converted it into cash and have distributed it by way of dividends; *but the preferential right of the preferred stockholders did not reach to a distribution of that which was capital, nor create any charge upon capital.* That which constitutes the capital stock of a corporation belongs to all of its stockholders, proportionately to their holdings. It is divided into shares and each share represents the holder's proportionate interest. *Jermain v. L. S. & M. S. R. Co.* 91 N. Y. 492. Upon dissolution, or in liquidation, it entitles him to share ratably in the assets. If the directors had undertaken to divide this surplus of capital, it was apportionable, only, among all the stockholders ratably. . . .

"In the present case, it must be borne in mind that the $9,138.15 remained in the corporate accounts, after the reduction of capital stock, as a portion of the former capital and it was, in no sense, like an excess of property, which had been accumulated in the conduct of the business beyond the fixed capital. It did not represent 'surplus profits arising from the business.' "

Sec. 182.13 (1), Stats. 1929, provides:

"Any corporation may, in its original articles, or by amendment thereto adopted by a three-fourths vote of the stock, provide for preferred stock; for the payment of dividends thereon at a specified rate before dividends are paid upon the common stock; for the accumulation of such dividends; for a preference of such preferred stock not exceeding the par value thereof, over the common stock in the distribution of the corporate assets other than profits; for the redemption of such preferred stock, and for denying or restricting the voting power of such preferred stock."

Sec. 182.19 (1), Stats. 1929, provides:

"No dividend shall be paid by any corporation until at least fifty per cent of the authorized capital stock has been fully paid in, *and then only out of net profits properly applicable thereto,* and which shall not in any way impair or diminish the capital.  .  .  ."

Sec. 182.13 (1), Stats., above defines the preference which may be given preferred stock. It limits such preference to the par value thereof over the common stock in the distribution of corporate assets *other than profits.* Sec. 182.19 (1) limits the payments of dividends to net profits. Paragraph (e) of article IV of the defendant's articles limits the payment of dividends and the premium on preferred stock in liquidation to profits. The defendant corporation having been organized under the laws of Wisconsin, the general corporation laws of Wisconsin form a part of defendant's corporate charter and, therefore, constitute a part of the contract between the corporation and the stockholders. *Johnson v. Bradley Knitting Co.* 228 Wis. 566, 280 N. W. 688; *Soehnlein v. Soehnlein,* 146 Wis. 330, 131 N. W. 739; *Gaskill v. Gladys Belle Oil Co.* 16 Del. Ch. 289, 146 Atl. 337; *Commonwealth v. Allen,* 240 Mass. 244, 133 N. E. 625; *Bouree v. Trust Francais Des Actions De La Franco-Wyoming Oil Co.* 14 Del. Ch. 332, 127 Atl. 56.

In general, the rights of various classes of stock to share in the assets of the corporation upon liquidation are fixed by the contract of the stockholders with the corporation. *Penington v. Commonwealth Hotel Construction Corp.* 17 Del. Ch. 188, 151 Atl. 228; *Gaskill v. Gladys Belle Oil Co., supra; Roberts v. Roberts-Wicks Co., supra; Michael v. Cayey-Caguas Tobacco Co.* 190 App. Div. 618, 180 N. Y. Supp. 532; *Drewry, Hughes Co. v. Throckmorton,* 120 Va. 859, 92 S. E. 818; *Bishop v. Smyrna & C. R. Co.* (1895) 2 Ch. (Eng.) 265; *Re Chrichton's Oil Co.* (1902) 2 Ch. (Eng.) 86.

It follows that the judgment herein must be modified so as to eliminate that part which directs the payment of accumulated dividends and premium on preferred stock after the payment of the declared value of common stock; that is, to eliminate that particular part of the judgment from which defendant appeals. After the payment of the full par value of the preferred stock, the remaining assets will belong to the common stockholders.

*By the Court.*—Judgment modified as directed in the opinion, and, as so modified, it is affirmed. The defendant-appellant to have costs on its appeal.