WELCH and others, Trustees, Appellants, vs. LAND DEVELOP-
MENT COMPANY, Respondent.

*October 12—November 14, 1944.*

For the appellants there was a brief by *Wood, Warner, Tyrrell & Bruce* of Milwaukee, and oral argument by *Jackson M. Bruce.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

FRITZ, J. The facts alleged in the complaint, so far as pertinent on this appeal, are to the following effect. Defendant corporation was organized in 1909 with an authorized paid-in capital stock of $250,000, divided into two thousand five hundred shares having a par value of $100 each. In 1912, Art. III of its articles of incorporation was amended by a resolution, adopted by the unanimous vote of the common stockholders, to authorize also the issue of one thousand shares of preferred stock of the total par value of $100,000. This stock was sold largely to the common stockholders, who purchased it at par in reliance upon the following provisions in a recital in the preamble of the resolution amending Art. III, and in the article as amended, to wit:

(Provisions in preamble)

"Whereas, all of the outstanding stock of this company is represented . . . and has consented and does hereby consent that preferred stock to the amount of $100,000 be issued by the company, which preferred stock shall give a preference to the holders thereof both in the earnings of the company and in any distribution of corporate assets other than profits.

"Now therefore," etc.

(Provisions in amended Art. III)

"Art. III: . . . . The preferred stock shall be entitled to receive from the net earnings of the company an annual dividend of seven (7) per cent (which dividends shall be cumulative). In case of a distribution of the assets of the company the preferred stock shall receive an amount equal to its par value, with accumulated dividends, before the common stock shall be entitled to share in such assets. The preferred stock may be retired at any time the board of directors may so determine and shall be retired as soon as the company's obligations as of January 1st, 1912, shall have been paid and as soon thereafter as there may be sufficient funds on hand to retire the same, upon payment of the par value thereof, together with a dividend at the rate of seven (7) per cent per annum to date of retirement. No dividends shall be paid upon the common stock until after the preferred stock shall have been retired."

The provisions beginning with the words "in case of a distribution" were printed on the preferred-stock certificates, and also upon the new common-stock certificates issued in substitution of the old certificates held by the holders thereof. Annual dividends upon the preferred stock were paid until December 31, 1922. On December 29, 1927, the board of directors adopted the following resolution:

"Resolved: That a liquidating payment of ten per cent be and is hereby authorized on the outstanding preferred stock of the company, payable on February 1, 1928, and

"Resolved further: That the payment of all the accumulated dividends to February 1, 1928, on said ten per cent of the preferred stock of the company be and is hereby authorized payable on February 1, 1928."

Similar resolutions were adopted until February 1, 1930, and by then twenty-seven per cent of the par value had been paid on the preferred stock. After February 1, 1930, the board adopted similar resolutions for payments upon the par value of preferred stock, but without providing for the payment of accrued dividends. The last payment, made on January 18, 1944, had the effect of retiring all of the preferred stock at par, and reimbursing the holders thereof for the accumulated dividends thereon up to and including February 1, 1930; but dividends amounting to $74,945.37, which accrued since that date, have been left unpaid. The present assets of the corporation, over and above its liabilities excepting the common stock, amount to $111,510.62. In that amount there are no net earnings or profits, and none are available for the further payment of accrued dividends on preferred stock; and with the corporation's remaining assets amounting to only $111,510.62, its common stock has become impaired to a large extent. Up to February 1, 1930, the accumulated dividends on the retirement instalments of principal were paid out of surplus; but after that date there was no available surplus, and if, after the retirement payments of the preferred stock in full at par, the holders thereof are entitled to further payments of accumulated dividends in preference to the common stockholders, such payments must come out of corporate assets other than net earnings or profits. Plaintiffs and other preferred stockholders have demanded that defendant pay the preferred stockholders, out of the remaining assets as they become available for distribution, the accumulated unpaid dividends, or the equivalent thereof; and defendant has refused to make any such payment.

Plaintiffs also allege that—

"the purchasers of such preferred stock were informed through the terms of the preferred-stock provisions and recitals in the certificates that the preferred stockholders would have preference over the common stock in the payment of dividends and in the distribution of the corporate assets in the manner and to the extent recited in the articles of incorporation as amended and in the certificates of preferred stock;" and that "because of the representations that were made to the purchasers of the preferred stock as hereinbefore recited, and because . . . defendant has received and retained the benefit of the money so paid by the preferred stockholders for such stock," defendant "and the holders of the common stock should now be estopped to deny, the right of the preferred stockholders to be paid the accumulated preferred dividends, or an amount equivalent thereto, or an amount equivalent to the value of the use of the money by the defendant, before any distribution of corporate assets shall be made to the holders of the common stock."

In seeking a declaratory judgment, plaintiffs contend that the preferred stockholders are entitled to the payments of additional amounts, as the unpaid balance of the accumulated dividends or the equivalent thereof as interest on their investment, out of defendant's remaining capital assets before the holders of common stock are entitled to share in these assets; that defendant and its common stockholders in equity are estopped to deny to the preferred stockholders payment of either the unpaid accumulated dividends or the equivalent thereof as interest on their investment; and that defendant retired its preferred stock under circumstances requiring payment of the accumulated dividends as a premium or condition of retirement.

In relation to those contentions the learned circuit judge said, in sustaining defendant's demurrer,—

"Upon the showing made in the complaint it appears that no earnings or profits are included in the present assets of the corporation; that the total outstanding preferred stock has

been liquidated by periodic payments. It also appears that the common stock has already been impaired to the extent of $136,989.38. . . . It follows that pursuant to the provisions of secs. 182.13 and 182.19 there can be no lawful authorization of payment of accumulated preferred dividends. *Hull v. Pfister & Vogel Leather Co.* 235 Wis. 653, 666. . . . The question of estoppel does not need to be passed upon in this case for the reason that the articles of incorporation . . . fairly construed, are not hostile to the provisions of the statutes above referred to. In Art. III of the amendment of April 3, 1912, the following sentence appears immediately prior to the portion of the article which is printed on the face of the stock certificates: 'The preferred stock shall be entitled to receive from the *net earnings* of the company an annual dividend of seven per cent (which dividends shall be cumulative).' Furthermore provisions in said Art. III use the language 'With accumulated dividends.' This of course means 'accumulated dividends *if earned.*' The provision in the amendment to Art. III pertaining to retirement of stock 'as there may be sufficient funds on hand to retire the same,' etc., necessarily implies (considering the context) that there must be sufficient funds to pay the par value of the stock and also, if dividends are to be added, sufficient funds to pay such dividends. The portion of Art. III which is printed on the face of the stock certificates would have been somewhat clarified if the sentence immediately preceding the printed portion had been likewise included, as it might well have been, pursuant to the provisions of subdivision (2) of sec. 182.13. The preferred stockholders, who are practically the same as the common stockholders, cannot justly claim that they were imposed upon. They are not only bound to know the provisions of the statutes but they are also presumed to know the provisions of their own articles of incorporation. The articles should, if it can reasonably be done without doing violence to the language, be construed to be in harmony with the provisions of the applicable statutes. In the opinion of the writer, while the articles might have been more clearly and pointedly expressed, they are not out of harmony with the statutory provisions. The contention also is made by the plaintiffs that although the words 'liquidating payments' were used in the various resolutions, there has actually been a 'redemption' of the preferred stock by the process of retirement; and that in

the case of such a redemption the additional seven per cent, although called a dividend, should be considered as a 'premium.' I do not believe that it is necessary to hold that there is a liquidation of the corporate assets in order to hold that the preferred stockholders are not entitled to have accumulated dividends paid to them out of the capital assets of the corporation. (See, however, paragraph 2 of the complaint, where it is alleged that the defendant corporation 'is engaged in the business of managing its real estate and selling and disposing of the same *in liquidation of its business.*') But in order that there may be a lawful 'redemption' of the par value of the preferred stock, plus a premium, out of the assets of the corporation, other than profits, authority for such action must first be found in the statutes; and appropriate provisions pursuant to such statutory authority must be found in the articles of incorporation. Such statutory authority is not expressly given although, in general terms, the statute (182.13) authorizes provisions in the articles concerning the redemption of the preferred stock. It is here considered that in order that the right to redeem preferred stock at a premium may exist, the articles must state the fixed redemption price. (Compare the parenthetical language in sec. 182.14.) A mere statement in the articles that the preferred stock may be 'retired' when there are 'sufficient funds on hand to retire the same, upon payment of the par value thereof, *together with a dividend* at the rate of seven per cent per annum to date of retirement' is not equivalent to a provision for a *redemption* of the preferred stock at a premium, for the 'dividend' can only be paid out of the net profits. The instant case makes a weaker appeal than the *Hull Case* for the application of the assets (other than profits) to dividends on preferred stock, because here, in order to do so, such payments would actually impair the capital. (See Ex. 6.) In the *Hull Case* the debatable issue centered around the meaning of the so-called 'surplus,' it being held that the surplus there was not created from 'earnings.' 235 Wis. 656, 663. Here it not only appears that there is no 'surplus' but also that the common stockholders cannot,—on the basis of the statement (Ex. 6)—receive even the par value of their stock. The conclusion is therefore reached that the preferred stockholders (having heretofore been paid the par value of their stock) are

not entitled to receive accumulated dividends out of the remaining assets of the corporation. Such remaining assets (which consist only of capital) belong to the holders 'of the common stock."

The conclusions, and reasons therefor, which were thus ably stated by Judge AARONS, rightly determine all material issues raised by the parties; and there is no need to enlarge upon his written opinion excepting as it may be helpful to note the following: The provisions in secs. 182.13 (1) and 182.19 (1), Stats. 1929, which were held in *Hull v. Pfister & Vogel Leather Co.* 235 Wis. 653, 661, 666, 294 N. W. 18, to limit the preference that may be given preferred stock to "the par value thereof, over the common stock in the distribution of the corporate assets *other than profits*" (sec. 182.13 (1)), and to limit "the payments of dividends to net profits" (sec. 182.19 (1)), are substantially to the same effect (except as presently noted) as the provisions in those respects in secs. 1759*a* and 1765, respectively (Stats. 1911), which were in effect when defendant's articles of incorporation were amended in 1912 to authorize the issuance of the preferred stock. The only change material in this case is that a provision in sec. 1759*a* which read, "Neither preferred nor common stock shall bear interest," was omitted when that section, after having been renumbered as sec. 182.13, was revised in 1927. But, in lieu of the omitted provision it was provided in sec. 182.05, Stats. 1927, that "No stock shall bear interest." As the defendant, in its articles of incorporation, could provide for preferred stock in only the manner and subject to the above-stated limitations in secs. 1759*a* and 1765, Stats. 1911, it would have been beyond its power to provide in its amended Art III, or in any other manner, for the issuance of preferred stock which would not be subject to the statutory limitations that the preference, which may be given to such stock, is limited to "not exceeding the par value thereof over the common stock in the distribution of the corporate assets

other than profits," and that "no dividend shall . . . be
declared or paid . . . except out of net profits properly ap-
plicable thereto and which shall·not in any way impair or
·diminish the capital." Those statutory limitations are as ef-
fectively a part of issued certificates of stock and as binding
upon holders thereof as though they were printed thereon.
*Johnson v. Bradley Knitting Co.* 228 Wis. 566, 574, 280
N. W. 688; and to those statutory limitations there is ap-
plicable the rule that "When the legislative will is expressed in
the peremptory terms of such a statute, it 'is paramount and
absolute, and cannot be varied or waived by the private con-
ventions of the parties.' " *Jones v. Preferred Accident Ins.
Co.* 226 Wis. 423, 426, 275 N. W. 897. Consequently,
neither those limitations nor the additional limitation in sec.
1759a, that "Neither preferred nor common stock shall bear
interest," can be avoided or waived or varied by any pro-
vision in defendant's articles of incorporation or other private
conventions of the parties. Likewise, the legal effect and
consequences of the statutory limitations cannot be avoided
or defeated by invoking the doctrine of estoppel (*Gaskill v.
Gladys Belle Oil Co.* (Del.) 16 Ch. 289, 295, 146 Atl. 337,
339; *Nelson v. Superior,* 109 Wis. 618, 624, 85 N. W. 412;
*Gist v. Johnson-Carey Co.* 158 Wis. 188, 200, 147 N. W.
1079; *Joy v. Godchaux* (8th Cir.), 35 Fed. (2d) 649; 31
C. J. S. p. 250, sec. 63) ; or be circumvented by designating
as "interest" or "premium" the amount of the unpaid accumu-
lated dividends, which plaintiffs seek to have paid out of de-
fendant's capital assets. The limitations are applicable and
controlling as to any and all distributions of defendant's cor-
porate assets, other than net earnings or profits, to holders
of preferred stock; and absolutely prohibit the distribution of
its corporate assets, other than net earnings or profits, in
payment of dividends, upon the retirement or redemption on
liquidation of preferred stock or otherwise, so as to give a

preference to holders thereof over the common stockholders, except as to the par value of the preferred stock. The corporation could not accomplish through an attempted redemption of preferred stock the very thing the statutes prohibit it from doing; and the inhibitions thereof could not be circumvented by denominating the payment of the accumulated dividends from capital assets a "premium" for the retirement of the preferred stock. Such payment would not be a premium or interest in any sense, under the facts herein. On the contrary, in fact and under the language used in defendant's amended Art. III, and also used in the resolution adopted until February 1, 1930, for the "liquidating payment" of instalments and "accumulated dividends" thereon, it would be a dividend.

It follows that as there have been no net earnings or profits available since February 1, 1930, for the preferential payment of the unpaid balance of the accumulated dividends on preferred stock, the order must be affirmed.

*By the Court.*—Order affirmed.