GRAMS, Plaintiff-Appellant, v. MELROSE-MINDORO JOINT SCHOOL DISTRICT No. 1, and another, Defendants-Respondents.

*No. 75–126. Argued January 3, 1977.—Decided June 14, 1977.*
(Also reported in 254 N.W.2d 730.)

---

For the appellant there were briefs by *Bruce F. Ehlke, Robert J. Arnot* and *Lawton & Cates,* and oral argument by *Mr. Ehlke,* all of Madison.

For the respondents there was a brief by *John Bosshard* and *Bosshard, Sundet & Associates,* and oral argument by *John Bosshard,* all of La Crosse.

DAY, J. The question is whether a teacher's lack of legal authority to teach courses she had been teaching and was assigned to teach was a valid ground for discharge, notwithstanding that the employing school board was aware of her credentials before and after hiring her.

Phyllis Grams, the plaintiff-appellant, taught school for the defendant-respondent school district and a predecessor district for eight years beginning in the Fall of 1964.[1] In June, 1972 the school board discharged her on the ground she was not legally authorized to teach the courses which she had been teaching and to which she was assigned. In August of 1972, Ms. Grams com-

---

[1] She taught for the Mindoro school system in 1964; the Mindoro and Melrose school systems were consolidated in January, 1965.

menced this action seeking reinstatement or other appropriate relief. She alleged the discharge was arbitrary, capricious and unlawful, without good cause and in breach of contract.

A trial to the court began November 4, 1974. On November 6, at the close of Ms. Grams' case-in-chief, the court granted the district's motion to dismiss on the ground Ms. Grams failed to prove a prima facie case. Appeal is from the order of dismissal.

The proof was intended to establish that the school board regularly and knowingly contracted with Ms. Grams to teach courses in which she was not certified and that the board continually reassured her the non-certification was not a problem.

Ms. Grams has a lifetime certification in four areas: biology, general science, history and French. Her actual teaching assignments for the defendant district, however, only infrequently matched these areas of primary preparation. Her record of teaching assignments was as follows:

In the 1964–65 year she taught world history, typing and shorthand and had obtained a special one-year permit to teach commercial subjects. Correspondence in the record indicates H. N. Newman, on behalf of Mindoro Schools, requested the permit from the Department of Public Instruction (D.P.I.).

In 1965–66 Ms. Grams' individual contract specified she would teach business education. She taught typing I, world history, bookkeeping, and office practice.

The 1966–67 contract did not specify her teaching assignments. She taught bookkeeping, office practice, world history, two sections of French and three sections of typing.

In 1967–68 Ms. Grams taught French, world history and two sections of typing. The contract was unspecific.

In 1968–69 Ms. Grams contracted to teach commercial and foreign language courses and in fact taught typing,

world history, general business work study and a general science class.

The 1969–1970 contract specified commercial education and commercial work study experience. Ms. Grams taught clerical and secretarial office work courses.

The 1970–71 contract again specified commercial courses but also said, "Assisting teacher to French students, in accordance with the Teacher-Board Agreement." She taught office courses.

The 1971–72 school year was similar to the 1970–71 year in contract specifications and actual assignments.

In July, 1964 the D.P.I. granted Ms. Grams a permit to teach commercial subjects for the 1964–65 year. But in an accompanying letter, the D.P.I. wrote that if she was to continue teaching commercial subjects after that year, she had to have her credits evaluated by an accredited teacher training institution.

In the Spring of 1965 School Superintendent Louis A. Grzadzielewski told her she was deficient in preparation for office practice and needed additional training in business machines.

Ms. Grams testified she took a business machines course that Summer on the understanding that after the Mindoro and Melrose Schools were consolidated she would be able to teach French and possibly history. She did not obtain certification in this area. She stated:

"Mr. Grzadzielewski expressed gratitude. He said he had headaches enough (as) it was—without having to look for a commercial teacher for a one year period."

In November, 1969 an evaluating team at the school questioned Ms. Grams on why she was not certified in commercial courses. She testified this "disturbed and embarrassed" her but Superintendent Grzadzielewski told her it was not her responsibility but rather, an administrative omission.

In August 1971 at a regular pre-school year in-service session, teachers were warned of their responsibility to keep their certifications up to date. Ms. Grams again went to see Mr. Grzadzielewski. Ms. Grams testified his response was not to worry, he would take care of it.

By October of 1971 Ms. Grams was told by Mr. Grzadzielewski there would be difficulty getting her certified for the next year. He stated this information came from the D.P.I. He advised her she should embark on a program for at least a minor in commercial subjects. Ms. Grams testified that the only time she could pursue this course was the following Summer of 1972.

In June, 1971 and again in February 1972, Ms. Grams wrote Mr. Grzadzielewski stating she desired to be reassigned as soon as possible to teach in one of the areas of her major preparation. In her letter of February 7, 1972, she said:

"When I assumed the responsibility of the commercial department in 1969, it was with the assurance from the administration that I could without difficulty be properly certified in that area. But since this condition seems to have changed and there is considerable doubt that I can be certified, I sincerely believe that I should now be placed in an area where I have regular certification and can enjoy some degree of security."

On February 8, 1972 Mr. Grzadzielewski purportedly wrote Ms. Grams that the Board of Education insisted she obtain certification in commercial education for the 1972–73 year. Ms. Grams acknowledged at trial receipt of the letter but later in her testimony said she had never received it.

On March 14, 1972 Mr. Grzadzielewski hand-delivered to Ms. Grams a letter stating it was his understanding after talking with the D.P.I. she would not be certified for the 1972–73 year in the courses she was then teaching formally. For this reason, she was formally notified

her contract would not be renewed for the 1972–73 year. She was told, however, she would be granted a contract if she could obtain certification in commercial courses before a replacement teacher was hired.

Ms. Grams protested. First, she told Mr. Grzadzielewski the notice was untimely.[2] Ms. Grams said Grzadzielewski responded, "(T)hen I guess we will have to pay you for the following year whether you teach or not. . . ."

She then asked Grzadzielewski about an apparent teaching vacancy in history, an area in which Ms. Grams was certified. He stated the board preferred a younger person, she said. At the time of trial she was sixty years old.

In April, 1972 Ms. Grams by letter requested re-employment pursuant to sec. 118.22, Wis. Stats. Subsequently, in June, 1972, the Board held a hearing at which time she was formally discharged from her 1972–73 contract.

Ms. Grams seeks the equitable relief of reinstatement. No claim for money damages was filed pursuant to sec. 118.26, Stats.[3] That section provides that an action upon any claim against a school district must be preceded by making the claim directly to the school board. The equitable action for reinstatement is not subject

---

[2] Both sides agree the notice was untimely and this appears to be correct. Notice of non-renewal must be given by March 15 but a preliminary notice must precede it by 15 days. Sec. 118.22 (2) (3), Stats.

[3] "118.26 *Claim Against School District.* An action upon any claim shall not be maintained against a school district until the claim has been presented to the school board of the district and disallowed in whole or in part. Failure of the school board to allow the claim within 60 days after it is filed with the school district clerk is a disallowance. . . . No action on a claim may be brought after 6 months from the date of service of the notice of disallowance."

to this statute. *Flood v. Board of Education,* 69 Wis.2d 184, 188, 189, 230 N.W.2d 711 (1975), limiting *Veith v. Joint Sch. Dist. No. 6,* 54 Wis.2d 501, 506, 196 N.W. 2d 714 (1972).

Ms. Grams' teaching contract was void because she contracted to teach subjects she was not legally authorized to teach. The school board cannot be estopped from asserting the public policy of this state, as it is expressed by the Legislature. That policy is that teachers must be qualified in the areas in which they teach. The remaining question is whether on an equitable basis, the school board led Ms. Grams to believe it would obtain for her a special license, or alternatively, led her to believe she would be assigned courses in which she was certified as they came available. These questions of fact were resolved against Ms. Grams by the fact finder. The findings must be affirmed.

Trial was to the court with an advisory jury. For purposes of review this is the same as a trial to the court alone. Dismissal was granted after plaintiff had put forward her case-in-chief. This was a disposition on the merits. The findings of the lower court will not be set aside unless they are contrary to the great weight and clear preponderance of the evidence. In *Household Utilities, Inc. v. Andrews Co.,* 71 Wis.2d 17, 24, 25, 236 N.W.2d 663 (1975), this court said:

"Whether the case is tried to the court alone or to a jury, the defendant may challenge the sufficiency of the evidence at the close of plaintiff's case. . . In a case tried to a jury, the court sits as arbiter of the law and the jury as trier of fact. Where there is no jury, however, the court performs both functions. . . Where there is no right to a jury trial, or where that right has been waived, however, the court itself is the ultimate finder of fact. . . . a ruling granting the motion to dismiss should constitute a disposition of the case on

its merits. The findings of a trial court sitting without a jury will not be set aside on appeal unless they are contrary to the great weight and clear preponderance of the evidence. This court need not, on such an appeal, view the evidence in the light most favorable to plaintiff or draw inferences therefrom which might, under some view, support his claim."

The court found no basis on which to sustain the contract and order reinstatement.

The defendant district cannot be estopped from asserting the invalidity of Ms. Grams credentials to fulfill her contractual work assignment. The most recent contract in the record, 1971–1972, indicates she was hired to teach courses in commercial education and commercial work study experiences, areas in which she held no teaching certificate.

Sec. 118.21, Stats. 1971 states:

"118.21 *Teacher Contracts.* (1) The school board shall contract in writing with qualified teachers. The contract, with a copy of the teacher's authority to teach attached, shall be filed with the school district clerk. Such contract, in addition to fixing the teacher's wage, may provide for compensating the teacher for necessary travel expense in going to and from the schoolhouse at a rate not to exceed 6 cents per mile. *A teaching contract with any person not legally authorized to teach the named subject or at the named school shall be void. All teaching contracts shall terminate if, and when, the authority to teach terminates.* (2) Any person who contracts to teach in any public school shall file in the office of the school district administrator, within 10 days after entering into such contract, a statement showing the date of expiration and the grade and character of certificate or license held. In any school district not having a school district administrator, the statement shall be filed with the school district clerk. Teachers employed by a co-operative educational service agency shall file the statement in the office of the agency coordinator. No order or warrant may be issued by the school district clerk in payment of the salary of any

teacher, unless the teacher has complied with this subsection." (Emphasis supplied.)

The Legislature has spoken clearly. When the legislative will is expressed in peremptory terms of a statute it is paramount and absolute and cannot be varied or waived by the private conventions of the parties. *Welch v. Land Development Co.*, 246 Wis. 124, 132, 16 N.W.2d 402 (1944); 31 C.J.S., *Estoppel* sec. 110(2) p. 568. It follows that the legal effects and consequences of the statutory limitation cannot be avoided by estoppel. *Welch, supra. See, also, Blum v. Hillsboro,* 49 Wis.2d 667, 676, 183 N.W.2d 47 (1971). Ms. Grams cannot, in light of sec. 118.21(1), claim her contract to teach commercial subjects was not void. It was void.

This case is unlike *Nyre v. Joint School District,* 258 Wis. 248, 45 N.W.2d 614 (1951) cited by Ms. Grams. In *Nyre* there was no dispute a permit to teach would have been granted if it were requested. This is not the case here.

The trial court found the plaintiff failed to show any member of the board of education made any representation to her whatsoever concerning her teaching subjects; furthermore, there was no evidence by which to infer that the board obligated itself to obtain a special license to qualify Ms. Grams to teach outside her area of certification or to place her in her area of certification. These findings are supported by the evidence.

The elements of promissory estoppel are established in Wisconsin.

1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of promisee?

2) Did the promise induce such action or forbearance?

3) Can injustice be avoided only by enforcement of the promise?

*Rossow Oil v. Heiman,* 72 Wis.2d 696, 709, 242 N.W.2d 176 (1976) ; *Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 133 N.W.2d 267 (1965). The first two questions are for the fact finder, the third involves a policy decision necessarily embracing discretion. *Silberman v. Roethe,* 64 Wis.2d 131, 143, 218 N.W.2d 723 (1974). A municipal body is not immune from the doctrine of equitable estoppel. *City of Milwaukee v. Milwaukee County,* 27 Wis.2d 53, 66, 133 N.W.2d 393 (1965).

As early as July 1964, when Ms. Grams did obtain a special license to teach commercial subjects, she was warned that certification was necessary if she desired to continue teaching commercial subjects and that further work would be required before she could be certified. She thus had notice of the law which, then as now, precluded a reasonable expectation on her part that she could continue to teach in areas in which she was not qualified.

A special license to teach outside the area of legal qualification is intended to be temporary in nature; it is contemplated by the D.P.I., as was reflected in the 1964 letter, that a teacher who remains in the non-certified area will take steps toward becoming certified. Wis. Adm. Code section P I 3.02 states in relevant part:

"PI 3.02 *Special Licenses.* (1) A special license is an instrument, limited in time to one year or fraction thereof and to one specific job, to permit the employment of a legally qualified teacher who does not meet the legal qualifications for the teaching position he is asked to handle. Such license shall expire as of June 30 of the school year of issue or earlier.

"(2) No special license will be renewed, unless at least 6 semester hours of college work are taken between the date of issuance and the date of renewal. Such work must be directed toward the deficiency or deficiencies.

"(3) The administrative officer of the school must request such special license in writing and must explain the situation."

The evidence is that with the exception of one summer course, Ms. Grams did not work to correct the deficiencies in her credentials.

Ms. Grams testified that in 1969 Superintendent Grzadzielewski told her that the certification problems raised by a visiting evaluating team were not her responsibility, but rather, an administrative omission.

In *Harris v. Jt. Sch. District*, 202 Wis. 519, 521, 233 N.W. 97 (1930), this court stated:

"It is well established that the powers of school district officers are limited, and can only be exercised as the statute provides, and persons contracting with a district are legally charged with notice of the extent of such powers and the manner in which they must be exercised."

It is unfortunate if Ms. Grams relied on an alleged 1969 misstatement of law by her superintendent. But the responsibility to keep her credentials in order was her own. Her superintendent could not "waive" the law of this state. Where a plaintiff seeks equitable relief based on reliance principles, such reliance must be reasonable. *Chicago & N.W. Transportation Co. v. Thoreson Food Prod.*, 71 Wis.2d 143, 238 N.W.2d 69, 75 (1976). Reliance alleged in this case is not reasonable.

There is little evidence the school board induced Ms. Grams to believe she would be assigned to an area in which she was certified. Ms. Grams had taught commercial courses for three years prior to her discharge. The only specific evidence of inducement was a statement

by Ms. Grams she was promised an assignment in French and possibly history in 1965. The trial court did not find this sufficient to create an equitable obligation on the part of the board in 1972. This finding is not against the great weight and clear preponderance of the evidence.

At the end of plaintiff's case-in-chief and after some oral argument, plaintiff's counsel moved to reopen the case.

He stated in part:

". . . I would like to make a motion at this time. My motion is that if at this point in the file, the Court believes the application of 118.21, as raised by the defendants, and the precise terms of the 1971–1973 contract to be controlling in this matter, we would ask the Court for leave to reopen our case to present further evidence of the conduct of the defendants which would go to reformation and to equitable estoppel by waiver regarding the operation of 118.21 and the precise terms of the 1971–1972 contract."

The implications of sec. 118.21, Stats. were disputed throughout the trial. A party cannot be estopped from asserting public policy as expressed in the statutes. Denying the motion was not an abuse of discretion.

*By the Court.*—Order affirmed.

BEILFUSS, C.J. took no part.

ABRAHAMSON, J. *(dissenting)*. Sec. 118.21(1), Stats., is designed to protect the pupils of the state from incompetent teachers. The record of this case raises, for me, the question of whether this statute has been improperly invoked by the school board to discharge this teacher without the board openly facing the issue of the reasons for the discharge and whether the discharge was lawful. The school board assigned the teacher to

teach a subject it knew she was not certified to teach; it insisted on that assignment; it did not permit her to fill a vacancy in an assignment for which she was licensed; and it then relied on a strict application of sec. 118.21, Stats., to discharge the teacher. It seems as if this practice can be a perverted use of the law. Under the circumstances of this case I do not think sec. 118.21, Stats., is an absolute defense to the charge that the teacher was discharged without just cause. For these reasons, I think justice may not have been done and I dissent.