In the INTEREST OF ANDREW J. K.,
a person under the age of 17:

STATE of Wisconsin, Petitioner-Respondent,

v.

ANDREW J. K., Respondent-Appellant.

Court of Appeals

*No. 2005AP2395. Submitted on briefs March 24, 2006.
—Decided May 3, 2006.*

2006 WI App 126

(Also reported in 718 N.W.2d 229.)

740

On behalf of the respondent-appellant, the cause was submitted on the briefs of *George M. Tauscheck*, Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Patricia J. Hanson*, assistant district attorney, and *Michael E. Nieskes*, district attorney, Racine.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. ANDERSON, J.[1] Andrew J. K. appeals from the trial court's order lifting a stay of a juvenile dispositional order placing him in a secured correctional facility. Andrew claims that the trial court erred in relying on his failure to complete the Alternatives to Corrections through Education (ACE) Program in Racine County as grounds to lift the stay. Andrew argues that the court did not have the authority under Wis.

---

[1] This case was converted from a one-judge appeal to a three-judge appeal pursuant to Wis. Stat. § 809.41(3) (2003–04). All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

STAT. ch. 938, the Juvenile Justice Code, to require his participation in the ACE Program as a condition of his dispositional order.

¶ 2. A review of the record reveals that the court did not order Andrew to enter the ACE Program as a condition of the dispositional order. Rather, in an effort to avoid juvenile corrections, Andrew voluntarily stipulated to an adjournment of the hearing concerning the stay and to his entry in the ACE Program. Furthermore, the record sustains the court's determination that, aside from his failures in the ACE Program, Andrew committed multiple violations of the original dispositional order. Accordingly, we affirm the court's order lifting the stay to corrections.

## FACTS

¶ 3. On August 12, 2004, Andrew was adjudicated delinquent on his admission to the charge of possession of a prescription drug with intent to deliver. The court ordered a two-year placement in a juvenile corrections facility, but stayed the placement subject to Andrew's compliance with several conditions. These conditions included attendance at school with no unexcused absences or tardinesses, adherence to a curfew, submission to random drug testing, participation in counseling, compliance with the conditions contained in the dispositional orders from two other cases and compliance with treatment at Rogers Memorial Hospital Child and Adolescent Services Day Treatment Program. The dispositional order from one of the previous cases required Andrew to take "all medications as prescribed by his treating doctor" and to attend school daily without behavioral problems.

¶ 4. Andrew began the Rogers Memorial program on August 23. On September 14, a therapist with the

program wrote a letter to Andrew's caseworker at the Racine County Department of Human Services. The therapist wrote that although Andrew demonstrated an ability to follow the program's rules, he chose not to do so. According to the therapist, Andrew tested the limits by being disrespectful to peers and staff, provoking his peers, exhibiting unsafe behavior, engaging in a physical altercation and refusing to take responsibility for his actions and make good choices. The therapist expressed concern that Andrew spent his time trying to figure out "how to get out of Rogers" instead of focusing on how he could accomplish his treatment goals. The therapist also noted that the psychiatrist with the program recommended that Andrew take medication, but that his mother was adamantly opposed.

¶ 5. On September 27, the State filed a motion for sanctions against Andrew for violations of the court order. The motion indicated that Andrew had failed to comply with the counseling condition. Andrew stipulated to two violations of the dispositional order. The court ordered a twenty-day placement in secure detention, with a stay of eighteen days provided Andrew complied with the dispositional order.

¶ 6. On November 11, the State took Andrew into custody and placed him in short-term secure detention for allegedly violating the dispositional order by skipping classes. On December 10, the State again placed Andrew in short-term secure detention for violating the dispositional order. Andrew had been sent home from school on December 8 and his mother suspected that he had been smoking marijuana.[2]

---

[2] Andrew's mother testified that she could not exactly remember why Andrew was sent home on December 8. She suggested that it may have been his refusal to complete his

743

¶ 7. On December 13, the State filed a request to change Andrew's placement and revise the dispositional order. The State indicated that although Andrew completed the Rogers Memorial program, he was uncooperative in doing so. He had "major school behavioral problems including failing grades, suspensions and refusal to do work or listen to teachers." The State asked the court either to place Andrew in the ACE Program if he stipulated to such placement or to lift the stay on his two-year corrections commitment. According to the request, "The Department does not know what else to do with Andrew."

¶ 8. The ACE Program was developed as an alternative to state correctional placements and is based upon the belief that education is the most important tool in addressing delinquent behavior. The ACE Program involves placement in a secure residential setting for an average of 100 to 140 days. During that time, participants engage in a variety of educational and personal growth activities, including alcohol and other drug abuse (AODA) education, career exploration, classes for school credit, journaling, project-based learning and behavior management. Noncompliance with the program results in an immediate referral back to the juvenile court and the possible imposition of a correctional placement order.

¶ 9. In a stipulation dated December 17 and signed by Andrew and his attorney, Andrew agreed to participate in the ACE Program. He also waived "any and all statutory and constitutional time limits" impacting the State's request for a change in placement and revision of the dispositional order. The court approved the stipulation, stating, "The Court hereby makes a good cause finding for delay to allow the juvenile to

homework. Andrew's father testified that Andrew had "some kind of problem with one of his teachers."

voluntarily enter into the Racine County Human Services Department ACE Program, and adjourn the revision/change of placement hearing in this matter until such time as the juvenile is no longer a participant in the program."

¶ 10. On January 26, 2005, Andrew was terminated from the ACE Program "due to repeated physical aggression toward other peers in the ACE Program." On February 11, the State filed a motion to lift the stay on the order to corrections. In support of its motion, the State cited several violations of the dispositional order, including Andrew's uncooperative behavior during his treatment at Rogers Memorial, refusal to take recommended mediations, truancy from school between September and December of 2004, refusal to do school work and resulting failing grades, fighting while in secure detention prior to his entry into the ACE Program and the numerous altercations with other ACE Program participants from December 2004 until his termination in January 2005.

¶ 11. In response, Andrew argued that the ACE program lacked a statutory basis because it required his placement in a secure residential setting not specified as a dispositional alternative in Wis. Stat. ch. 938. Following arguments on February 16, the court rejected Andrew's argument. The court explained that Andrew had stipulated to his participation in the ACE Program and his entry into the program had the effect of delaying the original motion to lift the stay.

¶ 12. The court held a hearing on the motion to lift the stay on February 22. Following the testimony of Andrew's parents and caseworker at the Racine County Human Services Department, the trial court lifted the stay and committed Andrew to the Ethan Allan School for Boys. The court explained that while the evidence

that Andrew had smoked marijuana on December 8, 2004, was not "particularly compelling," Andrew had otherwise violated the dispositional order. The court found that he was "disruptive and disrespectful at the Rogers Day Program" and "a disruptive force in one or two or three separate different ways in the ACE Program." The court observed that Andrew failed to take the doctor-recommended medication. Andrew appeals.

## STANDARD OF REVIEW

¶ 13. In this appeal, Andrew asks us to interpret and apply Wis. Stat. ch. 938. The interpretation and application of a statute are questions of law subject to de novo review. *See State v. Kendell G.*, 2001 WI App 95, ¶ 9, 243 Wis. 2d 67, 625 N.W.2d 918. Andrew also seeks review of the trial court's discretionary decision to lift the stay on his commitment to corrections. We will sustain a discretionary decision if the trial court examined the relevant facts, applied a proper standard of law, and used a rational process to reach a reasonable conclusion. *Johnson v. Allis Chalmers Corp.*, 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991). Our task as the reviewing court is to search the record for reasons to sustain the trial court's exercise of discretion. *Hughes v. Hughes*, 223 Wis. 2d 111, 120, 588 N.W.2d 346 (Ct. App. 1998). We will not disturb a trial court's findings of fact unless they are "clearly erroneous." Wis. Stat. § 805.17(2).

## DISCUSSION

### ACE Program

¶ 14. Andrew complains that the ACE Program amounts to the illegal imposition of secure detention, contrary to Wis. Stat. ch. 938. He argues that Wis. Stat.

§ 938.34, the dispositional section, clearly confines the range of dispositional alternatives available to the court to those specifically authorized in the statute. Andrew misses the point—the court did not order his participation in the ACE Program.

¶ 15. WISCONSIN STAT. § 938.34 lists a multitude of different programs, activities or placements a court might order, and refers to them as "[t]he dispositions under this section." Section 938.34(4m) permits a juvenile court to order an adjudged delinquent to a "secured correctional facility." Pursuant to § 938.34(16), a trial court, after ordering a disposition, may enter an additional order staying the execution of the dispositional order contingent on the juvenile's satisfactory compliance with any conditions the court specifies in the dispositional order and explains to the juvenile.

¶ 16. The statute permits a court to stay the imposition of a dispositional order, including revisions, in order to give the juvenile a second chance to conform his or her behavior to any conditions imposed by the court. *Kendell G.*, 243 Wis. 2d 67, ¶ 16. Failure to comply with the conditions can trigger the commencement of the stayed portion of the dispositional order. *Id.* WISCONSIN STAT. § 938.34(16) provides in part, "If the juvenile violates a condition of his or her dispositional order, the agency supervising the juvenile shall notify the court and the court shall hold a hearing within 30 days after filing of the notice to determine whether the original dispositional order should be imposed . . . ."

¶ 17. Here, after adjudging Andrew delinquent, the trial court, as permitted by WIS. STAT. § 938.34(4m), ordered a two-year placement in a juvenile corrections facility. The court, pursuant to its authority under § 938.34(16), stayed the commitment subject to

Andrew's compliance with several conditions set forth at the hearing and in the order. Four months later, the State filed a request to change Andrew's placement and revise the dispositional order. Rather than face a hearing on a motion to lift the stay and the potential placement in a secured correctional facility, Andrew *voluntarily* chose to sign a stipulation to adjourn the hearing on the motion and to enter the ACE Program. In fact, he signed a consent form, in which he, among other things, (1) acknowledged that his attorney had explained the potential benefits and negative consequences of enrollment in the ACE Program and had provided him with a draft of the expected framework for the ACE Program; (2) recognized that the ACE Program "may be illegal, in that it is not provided for in Wisconsin's statutes"; (3) stipulated to the placement; and (4) waived time limits provided for in the statutes.

¶ 18. Although the court approved the stipulation, the court never ordered Andrew to enter the ACE Program. The court did not grant the adjournment on the condition that Andrew enter the ACE Program. The court determined only that Andrew's placement in the ACE Program supplied the "good cause" necessary to support the adjournment.[3] *See* WIS. STAT. § 938.315(2). We find nothing amiss with this practice.

---

[3] Andrew intimates that certain comments the court made at the hearing concerning the stipulation suggest that the court was, in fact, ordering Andrew to participate in the ACE Program. The court apparently commented on the merits of having Andrew participate. However, the page of the transcript he cites to, page four of record number thirty-five, is missing from the record. Even if we consider the court's comments, when they are read in the context of the whole hearing transcript and in conjunction with the court's written order, it is clear that the court uttered these remarks in support of its good cause finding.

¶ 19. The fact that the Juvenile Court of Racine County, Racine County Human Services Department and Racine Unified School District have joined together to offer a voluntary residential treatment program for adjudged juvenile delinquents that is an alternative to a "secured correctional facility" not found in Wis. Stat. § 938.34 does not make a juvenile's participation illegal. As noted in *Kendell G.*, a court is encouraged to give the juvenile a second opportunity to conform his or her behavior to any conditions the court imposed. *Kendell G.*, 243 Wis. 2d 67, ¶ 16.

¶ 20. Furthermore, the court's adjournment, at Andrew's request, to permit him to participate in the ACE Program is in keeping with the spirit of Wis. Stat. ch. 938. Wisconsin Stat. § 938.01 provides in relevant part:

> (2) It is the intent of the legislature to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system which will protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively. To effectuate this intent, the legislature declares the following to be equally important purposes of this chapter:
>
> . . . .
>
> (f) To respond to a juvenile offender's needs for care and treatment, consistent with the prevention of delinquency, each juvenile's best interest and protection of the public, by allowing the judge to utilize the most effective dispositional option.

The ACE Program, by providing educational and behavior modification resources in an intensive residential setting, certainly advances this legislative intent. We therefore commend Racine county for the development of this creative alternative to placement in a

secured correctional facility. We further praise the individuals involved with the ACE Program for having the foresight to obtain from the juvenile participant waivers of statutory time limits and consents to voluntary participation.[4]

## *Lift of Stay*

¶ 21. Andrew next suggests that the court erred in lifting the stay. He argues that the court based its determination primarily on violations of the ACE Program, which we have decided was not a part of the dispositional order. He further asserts that the other violations were not sufficient to warrant the imposition of the original dispositional order.

[4] We also reject Andrew's reliance on *Grams v. Melrose-Mindoro Joint School District No. 1*, 78 Wis. 2d 569, 254 N.W.2d 730 (1977). He quotes the following language from that case, "When the legislative will is expressed in peremptory terms of a statute it is paramount and absolute and cannot be varied or waived by the private conventions of the parties." *Id.* at 578. From this he concludes that the "ACE Program could not have been transformed into a legal disposition by Andrew's stipulation."

*Grams* does not apply here. The contract at issue in *Grams* required a teacher to instruct courses that she was not certified to teach when the statutes expressly declared that "[a] teaching contract with any person not legally authorized to teach the named subject . . . shall be void." *Id.* at 577; *Holtzman v. Knott*, 193 Wis. 2d 649, 690, 533 N.W.2d 419 (1995) (distinguishing *Grams*). Thus, the contract was explicitly proscribed by statute. *Holtzman*, 193 Wis. 2d at 690. WISCONSIN STAT. ch. 938 does not expressly prohibit stipulations relating to a juvenile's voluntary entry into an alternative program or prohibit a court from finding good cause for an adjournment on the basis of the juvenile's entry into such a program. Indeed, as we have explained, the legislative will as expressed in WIS. STAT. § 938.01 and contemplated in *State v. Kendell G.*, 2001 WI App 95, 243 Wis. 2d 67, 625 N.W.2d 918, seems to support such actions.

██

¶ 22. A court may not impose the original dispositional order unless the court finds by a preponderance of the evidence that the juvenile has violated a condition of his or her dispositional order. WIS. STAT. § 938.34(16). Here, aside from the alleged violations of the ACE Program conditions, the record supports the trial court's finding that Andrew violated conditions of the original dispositional order.

¶ 23. First, the dispositional order incorporates the conditions from dispositional orders in other cases. One such condition was that Andrew "take all medications as prescribed by his treating doctor." Contrary to Andrew's assertions, it does not matter that the specific medication prescribed was not mentioned at the motion hearing or that Andrew's parent's "discouraged [his] interest in medications." As the trial court noted, Andrew simply did not take the recommended medication. In her letter, the therapist at Rogers Memorial indicated that the psychiatrist had recommended medication, specifically a stimulant. Andrew's caseworker testified to his beliefs that Andrew "wanted nothing to do with meds" and did not take medication while at the Rogers Memorial program. Andrew's grandmother's comments from a September 29, 2004 hearing demonstrate that Andrew had not been on medication for the approximately four months prior to the hearing. This evidence supports the court's finding of a violation of the condition.

¶ 24. Second, the dispositional order dictated his compliance with the Rogers Memorial program. Although he completed the program, the trial court aptly pointed out that he had not cooperated in doing so. The therapist from Rogers Memorial indicated in her letter that Andrew had failed to fully follow the rules of, or

751

participate in, the treatment program—he provoked his peers, failed to follow directions and exhibited disrespect towards the staff and his peers.

¶ 25. Andrew argues that the twenty-day secure detention he received as a sanction in September 2004 adequately addressed these violations. However, by lifting the stay, the trial court obviously determined that the twenty-day secure detention did not adequately address those violations. We see no reason to disturb that discretionary determination.

¶ 26. In addition, the record reveals violations occurring after September but before Andrew entered the ACE Program that were not explicitly discussed in the trial court's oral ruling. *See Hughes*, 223 Wis. 2d at 120 (court searches record for reasons to sustain a trial court's discretionary decision). The dispositional order demanded his daily school attendance without unexcused absence, tardiness and bad behavior. The record contains a chart from his school showing multiple truancies between September and December of 2004. The record reveals that, for reasons not entirely clear, Andrew had a problem with one of his teachers on December 8 and was sent home. The record also contains a statement from his caseworker that Andrew had "major school behavioral problems including failing grades, suspensions and refusal to do work or listen to teachers."

¶ 27. The record supports the trial court's findings that Andrew violated conditions of his dispositional order. Therefore, we conclude that the court did not erroneously exercise its discretion in granting the State's motion to lift the stay.

*By the Court.*—Order affirmed.