CONTINENTAL CASUALTY COMPANY, Plaintiff-
Respondent,†

v.

WISCONSIN PATIENTS COMPENSATION FUND,
Defendant-Appellant.

Court of Appeals

*No. 90–2315. Submitted on briefs June 11, 1991.—Decided July
24, 1991.*

(Also reported in 473 N.W.2d 584.)

†Petition to review denied.

112

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul H. Grimstad* and *Lee J. Fehr* of *Nash, Spindler, Dean & Grimstad* of Manitowoc.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas A. Lorenson* of *Colwin & English, S.C.* of Fond du Lac.

Before Brown, Scott and Anderson, JJ.

SCOTT, J.   The Wisconsin Patients Compensation Fund (the fund) appeals from a summary judgment which ordered the fund to return to Continental Casualty Company (CNA) monies CNA had paid the fund to fully assume the responsibility and cost of defending Dr. Louis Floch in a medical malpractice action. The trial court concluded that the fund had been unjustly enriched as a result of mutual mistake and so must return to CNA any funds not expended on Dr. Floch's behalf. We disagree. We therefore reverse and remand for entry of summary judgment in the fund's favor.

In August 1986, Angela Friedeck and her son Timothy filed a medical malpractice action against Dr. Floch, Dr. Karl Klein, the fund and CNA. The complaint alleged that the physicians' negligent care before and during Timothy's birth in 1977 had resulted in severe, permanent central nervous system damage to Timothy.

Both doctors practiced at the Racine Medical Clinic. The clinic held professional malpractice insurance through CNA and had policy limits of $200,000 per doctor. In addition, each physician had excess coverage with the fund. *See* sec. 655.27(1), Stats. When the negligence claim was filed, CNA retained separate defense counsel for each physician. The fund also tendered its defense to CNA. *See* sec. 655.27(5)(b). As a result, CNA found itself facing the prospect of defending at its expense both doctors and the fund, and paying any judgment or settlement up to $200,000 for each physician.

After preliminary discovery and review by expert medical consultants, CNA's defense attorneys concluded that both physicians had substantial potential exposure. They also concluded that although defenses were available, if the case were to be determined in the child's favor, there existed "the potential for a major damage award . . . well in excess of $1,000,000."

Based on this evaluation, CNA approached the fund in August 1987 about the possibility of CNA paying its policy limits of $400,000—$200,000 per physician—to the fund. In exchange, the fund would assume the responsibility and expense of defending both physicians. The fund agreed, and on August 24, 1987, the fund's senior malpractice claims specialist sent a letter of confirmation to CNA, the two physicians and the physicians' attorneys. The next month, CNA forwarded two drafts of $200,000 each to the fund.

114

Six months later, in March 1988, the Friedecks dismissed the case against Dr. Floch. In April, CNA and the fund settled the remaining claim against Dr. Klein for $420,000 plus a large annuity purchased on Timothy's behalf. Upon learning of Dr. Floch's dismissal from the suit, CNA asked the fund to return the $200,000 it had paid on his behalf, less the approximately $14,000 in costs the fund had incurred in his defense to that point. The fund refused and CNA commenced this litigation.

The fund moved for summary judgment. The trial court noted that resolution of Dr. Floch's portion of the case for less than seven percent of the $200,000 tendered by CNA had come "as a complete shock to both parties." Thus, relying on the doctrines of mutual mistake and unjust enrichment, the trial court denied the fund's motion. It instead granted summary judgment in favor of CNA and ordered that the "excess money" be repaid to CNA.

On appeal, the fund seeks to have the judgment reversed and summary judgment entered in its favor. When reviewing a grant of summary judgment, we apply the same methodology as the trial court. *Leverence v. United States Fidelity & Guar.*, 158 Wis. 2d 64, 73, 462 N.W.2d 218, 222 (Ct. App. 1990). The moving party has the burden to establish the absence of a factual dispute and entitlement to judgment as a matter of law. *Id.* A moving defendant—here, the fund—accomplishes this by presenting a defense to defeat the plaintiff's complaint. *Id.* at 74, 462 N.W.2d at 222. If the material facts are not in dispute and if competing inferences cannot be drawn from those facts, summary judgment is appropriate. *See id.*

Both parties agree that the essential facts are undisputed. Where they disagree is whether there existed a valid contract. We conclude a valid contract existed.

■

Construction of a written contract is a question of law which we review independently on appeal. *Jones v. Jenkins,* 88 Wis. 2d 712, 722, 277 N.W.2d 815, 819 (1979). The contract at issue here is the letter from the fund to CNA, the doctors and their attorneys confirming the negotiations initiated by CNA. The letter reads:

> Gentlemen, this will confirm our telephone conversation of August 20, 1987 regarding the above matter. At this point in time, you were willing to issue your draft in the amount of $200,000 (on behalf of Doctor Floch and behalf of Doctor Klein) to the Wisconsin Patients Compensation Fund in exchange for the Fund participating solely in the direction and defense of this case as it relates to both doctors.
>
> The Fund is willing to accept your offer in this matter, and upon receipt of your draft, will begin paying all expenses. Please send your drafts to my attention so that I can properly credit them to my files.
>
> If you should have any further questions concerning this letter, please give me a call. [Emphasis in original.]

■

The fund argues a valid, enforceable contract existed because all three necessary elements—offer, acceptance and consideration—were present. We agree. The contract is clear on its face. When a contract is unambiguous, the language must be understood to mean what it clearly expresses, and we may not depart from its plain meaning. *Hortman v. Otis Erecting Co.,* 108 Wis. 2d 456, 461, 322 N.W.2d 482, 484 (Ct. App. 1982). It is

our duty to construe the contract as it stands. *Id.* at 461, 322 N.W.2d at 485.

The parties negotiated and agreed to a plan conceived by CNA whereby CNA would be entirely relieved of responsibility for the physicians' defense in exchange for $400,000—$200,000 each for Dr. Klein and Dr. Floch. Dr. Floch was dismissed from the case after $13,815 was spent readying his defense. The freely-made bargain thus turned out well for the fund and not so well for CNA. It is black-letter law that a contract voluntarily made between competent parties is valid and enforceable unless it violates a statute, rule of law, or public policy. *Mullen v. Coolong,* 132 Wis. 2d 440, 454, 393 N.W.2d 110, 116 (Ct. App. 1986), *overruled on other grounds, Nicholson v. Home Ins. Cos.,* 137 Wis. 2d 581, 599–600, 405 N.W.2d 327, 334–35 (1987). No such violation is alleged or shown here. We thus have no right to reinterpret the contract simply to relieve CNA of a disadvantageous result. *See Hortman,* 108 Wis. 2d at 461, 322 N.W.2d at 485.

The clarity of the contract notwithstanding, CNA contends that a valid contract did not exist. It asserts that there was no meeting of the minds between the parties regarding the disposition of any money not expended in the defense of one or both of the physicians. Thus, CNA concludes that the doctrine of mutual mistake applies. We are not persuaded.

A mutual mistake is one reciprocal and common to both parties, where each alike labors under a misconception in respect to the terms of the written instrument. *Willett v. Stewart,* 227 Wis. 303, 310, 277 N.W. 665, 668 (1938). CNA argues that both parties labored under the misconception that the entire $200,000 would be needed

117

and spent for each doctor's defense and that the failure to include a provision for disposition of any money not so spent confirms that there was no meeting of the minds on that issue and requires application of the doctrine of mutual mistake.

CNA's argument is, at first glance, seductive. However, mutual mistake must be based on a past or present, not a future, fact. *Krezinski v. Hay,* 77 Wis. 2d 569, 573, 253 N.W.2d 522, 524 (1977). Future facts rest in conjecture and both parties are assumed responsible for considering the possibility that such facts may occur. *See id.* Thus, when examined more closely, it is apparent that CNA's real contention is not that both parties labored under a misapprehension of an existing fact, but that they did not foresee Dr. Floch's potential, if unexpected, dismissal from the case. CNA's failure to consider the possibility—however remote—that the entire $200,000 would not be needed for one of the physician's defense may reflect lack of forethought, or even poor judgment. It does not, however, illustrate mutual mistake. The contract stands.

The trial court also determined that the fund was unjustly enriched by the portion of the $200,000 tendered for, but not spent on, Dr. Floch's defense. Having concluded that there was a valid, enforceable contract between the parties, we disagree. The doctrine of unjust enrichment does not apply where the parties have entered into a contract. *See Watts v. Watts,* 137 Wis. 2d 506, 530, 405 N.W.2d 303, 313 (1987).

Finally, CNA's amended complaint alleges breach of contract as a second cause of action. The trial court did not address this claim, and we address it almost as

118

briefly. The contract called for CNA to pay the fund $400,000 in exchange for the fund's assumption of the complete cost and defense of the case, and both parties fully performed their obligations. There was no breach. Accordingly, we reverse the judgment of the trial court and remand for entry of summary judgment in favor of the fund.

*By the Court.*—Judgment reversed and cause remanded with directions.