Wayne A. GREENLEE, Plaintiff-Appellant,†

v.

RAINBOW AUCTION/REALTY CO., INC., Defendant-Respondent,

FARMERS & MERCHANTS BANK, Defendant-Third Party Plaintiff-Respondent,

v.

Jon SCHUSTER, Third Party Defendant.

Court of Appeals

*No. 95–1463. Submitted on briefs April 12, 1996.—Decided May 30, 1996.*

(Also reported in 553 N.W.2d 257.)

†Petition to review denied.

654

For the plaintiff-appellant the cause was submitted on the briefs of *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.* of New Richmond.

For the defendant-respondent the cause was submitted on the brief of *William P. Skemp* of *William Skemp Law Firm, S.C.* of La Crosse.

For the defendant-third party plaintiff-respondent the cause was submitted on the brief of *William T. Curran* of *Curran, Hollenbeck & Orton, S.C.* of Mauston.

Before Eich, C.J., Sundby and Vergeront, JJ.

VERGERONT, J. This appeal involves the interpretation of § 452.20, STATS., which prohibits a person from bringing or maintaining an action to collect a com-

mission for acting as a broker without alleging and proving that he or she is a duly licensed broker.[1] Wayne Greenlee sued Rainbow Auction/Realty Company, Inc. and Farmers & Merchants Bank (Farmers) seeking to recover a commission under a contract relating to the sale of a defunct truck stop in Oakdale, Wisconsin. After the jury returned a verdict for $100,000 in Greenlee's favor, the trial court granted Farmers' motion for judgment notwithstanding the verdict. The court concluded that Greenlee was acting as a broker and, because of § 452.20, could not maintain an action for a commission. We reach the same conclusion and affirm.

## BACKGROUND

The subject property is known as Stockmen's East, a defunct truck stop. Farmers & Merchants Bank acquired the property through a foreclosure. When

---

[1] Section 452.20, STATS., provides:

> No person engaged in the business or acting in the capacity of a broker, salesperson or time-share salesperson within this state may bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without alleging and proving that he or she was a duly licensed broker, salesperson or registered time-share salesperson at the time the alleged cause of action arose.

Section 452.03, STATS., provides:

> No person may engage in or follow the business or occupation of, or advertise or hold himself or herself out as, or act temporarily or otherwise as a broker or salesperson without a license. Licenses shall be granted only to persons who are competent to transact such businesses in a manner which safeguards the interests of the public, and only after satisfactory proof of the person's competence has been presented to the department.

Unless otherwise indicated, all citations to statutes are to the 1993-94 Wisconsin Statutes.

Greenlee learned that Farmers had acquired Stockmen's East, he contacted one of Farmers' bank officers, Dave Myer. Greenlee had owned and operated truck stops in the Midwest but was not a licensed real estate broker. Greenlee learned from Myer that the bank was looking for a purchase price of $600,000 for Stockmen's East. Greenlee's first conversation with Myer was in May 1992. Greenlee's initial idea was that he and a partner would lease the property from Farmers with an option to purchase. They would then get the business started up again and sell it at a profit as a going concern, without holding onto the property for too long. Greenlee wanted to structure the deal this way because he knew that he could not get a commission for selling real estate without a license. Greenlee began contacting potential buyers, and eventually contacted the Ho-Chunk Nation as a potential buyer. He quoted a purchase price of $825,000 to the potential buyers. At some point Greenlee's plans changed. When he first met with Ho-Chunk Nation representatives on September 30, 1992, he did not say that he intended to buy the property himself and resell it as a going concern; instead, he said the property could be purchased for $825,000.

Greenlee explained to the Ho-Chunk representatives the advantages of the property's location and that it would make a good location for a casino. They expressed interest and kept calling Greenlee to visit them. Greenlee kept in touch with them. When the representatives asked to see the property, Myer gave Greenlee the keys to the property and Greenlee showed it on two occasions.

Sometime in the latter part of September, or perhaps after the September 30 meeting, Greenlee told Myer he had a potential buyer for the property, but

would not divulge the name unless there was a written agreement to compensate him. Myer told Greenlee that the bank had entered into a commercial listing contract with Rainbow Auction/Realty Company, Inc., with Jon Schuster as the real estate broker with the exclusive right to sell the property. Myer told Greenlee that he would have to deal with Schuster.[2]

Schuster and Greenlee met. Greenlee told Schuster he wanted $100,000 out of the sale of the property. When Schuster learned that Greenlee was not a licensed broker, Schuster told Greenlee that he could not pay him. After further discussion, Schuster drafted the contract that he, Greenlee and Farmers eventually signed. It was Schuster's idea that it would be lawful to divide the assets into real and personal property and pay Greenlee a commission on the personal property.

The contract provided in relevant part:

> As per our conversation at the Holiday Inn Monday afternoon it is my understanding that we have come to an agreement that if you [Greenlee] provide a buyer for the property in Oakdale, Wi. [sic] known as Jermoos that your buyer would make an offer of no less than $800,000 and it is your belief that his offer will be in the range of $825,000, that these terms of fees and monies received by yourself, F&M Bank and Rainbow Auction Realty Co. would be as such.
>
> A. The equipment and goodwill name would be sold for $200,000 of which you will receive 1/2 of such money.

---

[2] Jon Schuster was not named as a defendant in Greenlee's complaint. Farmers & Merchants Bank filed a third-party complaint against him and a cross-claim against him and Rainbow Auction/Realty Company, Inc.

B. The Real Estate will be sold by Rainbow Auction Realty Co. at a fee of 7% that amount will be either $600,000 or $625,000. The balance which would be assuming it would be sold at $825,000 would leave the F&M Bank a sum of $658,000.

It was mentioned by yourself, Mr. Greenlee, that your client may be selling bonds to secure monies to purchase and develop said property in Oakdale. It would be my recommendation on behalf of the F&M Bank to ask for a closing date of January 1993. I feel this is a reasonable amount of time. Failure to close by that time frame should your buyer be unable to secure their financing would result in forfeiture of their Earnest Money. With the monies going to the F&M Bank and Rainbow Auction Realty Co. as liquidated damages and for removing the property from the market.

We discussed the fact that you will be showing the property on Friday October 9. Mr. Myers advised you that a key is available for you to view the property and if after viewing it you would like to meet and start the necessary paperwork we can go from there.

After the contract was fully executed on October 21, 1992, Greenlee disclosed the name of the Ho-Chunk Nation and set up a meeting between Schuster and representatives of the Nation. The meeting took place on October 30, 1992. Greenlee was present at the meeting and introduced Schuster to the Nation representatives but did not otherwise participate in the meeting. After that meeting, Greenlee had no further involvement in the negotiations or sale of the property. In November 1992, the Nation delivered a purchase agreement to Farmers for the sum of $725,000. Rainbow and Farmers negotiated an agreement with the Nation that resulted in a March 1993 closing. A sub-

stantial sum was held in escrow pending pollution cleanup.

Greenlee filed suit when Rainbow and Farmers refused to pay him his commission under the contract. Rainbow and Farmers both raised in their answers an affirmative defense based on § 452.20, STATS. However, Rainbow's summary judgment motion did not refer to this defense, but instead was based on the defense that Greenlee did not perform as required under the contract.[3] The court denied the motion, concluding that there was a triable issue as to whether Farmers and Rainbow breached their duty of good faith in their dealings with Greenlee after the October 30 meeting between Schuster and the Nation, thereby preventing Greenlee from performing. The trial testimony focused on whether Greenlee performed as required under the contract, and if he did not, why he did not.[4]

The verdict form submitted to the jury contained two questions: (1) did Rainbow and/or Farmers breach their contract with Greenlee? and (2) what sum of money will fairly and reasonably compensate Greenlee (if the jury answered "yes" to the first question)? The jury answered the first question "yes" and awarded damages of $100,000.

Although the verdict did not contain any questions concerning § 452.20, STATS., there was an instruction on the statute. The instruction stated that Greenlee was not a licensed real estate broker, partially paraphrased the text of § 452.20, and stated that damages could not be awarded to Greenlee relating to any sale of

---

[3] Farmers did not move for summary judgment.

[4] Before trial, the case was bifurcated, with the question of the defendants' liability to Greenlee to be tried first and a second trial, if necessary, on Farmers' cross-claims against Schuster and Rainbow.

Farmers and Rainbow brought a number of post-verdict motions. One of Farmers' motions was for judgment notwithstanding the verdict on the ground, among others, that the contract was unenforceable because Greenlee, though not licensed as a broker, engaged in the sale of real estate. The trial court granted judgment notwithstanding the verdict on this ground and dismissed the complaint.[5]

## STANDARD OF REVIEW

We must first decide the proper standard for reviewing the trial court's decision, which depends on the nature of the decision. Greenlee argues that although Farmers labeled the pertinent motion a motion for judgment notwithstanding the verdict, and although the trial court treated it as such, that is incorrect. According to Greenlee, because the jury was instructed on § 452.20, STATS., the motion is really a motion to change the answer to the first question in the verdict on the grounds of insufficiency of the evidence to support that answer. The trial court erred in doing so, Greenlee contends, because there was credible evidence to support the jury's answer.

A motion for judgment notwithstanding the verdict concedes that the findings of the verdict are true but contends that the moving party should have judgment for reasons evident in the record other than those decided by the jury. Section 805.14(5)(b), STATS. In con-

---

[5] The trial court also addressed the other post-verdict motions and concluded they were without merit.

trast, a motion to change an answer in the verdict challenges the sufficiency of the evidence to sustain the answer. Section 805.14(5)(c). A motion challenging the sufficiency of the evidence may not be granted unless the court is satisfied that, considering all credible evidence in the light most favorable to the nonmoving party, there is no credible evidence to sustain the verdict. Section 805.14(1).

The trial court's decision on the application of § 452.20, STATS., and related sections did not analyze the sufficiency of the evidence to sustain the jury's finding that Greenlee performed under the contract. Rather, the court assumed the jury's finding was correct but determined that Greenlee could not recover because the evidence established that he was acting as a broker. This is the appropriate analysis on a motion for judgment notwithstanding the verdict. The court applied the statutory definition of "broker" to the testimony concerning the contract and Greenlee's activities, implicitly deciding that there were no disputed facts and that the question was one of law for the court to decide. Although Greenlee characterizes the court's decision as changing the answer in the verdict, the substance of his argument is that the court erred in its application of the statute to the facts of this case. Greenlee does not point to any conflict in the testimony pertinent to this issue.

We agree with the trial court that the pertinent facts are not disputed. The interpretation and application of the statute to those facts is a question of law. *See Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985). When a trial court decides a question of law on a motion for judgment notwithstanding the verdict, we review its decision de novo.

*Merrill Lynch v. Boeck,* 120 Wis. 2d 591, 600-01, 357 N.W.2d 287, 292 (Ct. App. 1984), *rev'd on other grounds,* 127 Wis. 2d 127, 377 N.W.2d 605 (1985).

The instruction on § 452.20, STATS., does not alter our conclusion on the proper standard of review, but it does require further discussion. The instruction, in essence, states that because Greenlee is not a licensed broker, he cannot be awarded damages for the sale of any real estate, only for the sale of personal property. Since the instruction is directed to Greenlee's damages, we do not agree with Greenlee that the jury's finding that he performed under the contract implies a determination that he was not acting as a broker. However, we do conclude that implicit in the jury's answer to the second question is a determination that $100,000 are the damages due Greenlee for the sale of personal property; and because $100,000 is the total amount Greenlee was entitled to under the contract, the jury's finding on damages implies a determination that the commission under the contract related entirely to the sale of personal property.[6]

The trial court did not discuss the instruction or its relation to the jury's verdict. However, the court did interpret the contract to condition Greenlee's commission on the sale of real estate as well as personal property, an interpretation contrary to the jury's implicit determination that the contract related only to

---

[6] The instruction does not provide the statutory definition of broker in § 452.01(2), STATS., but instead relies on a distinction between sale of real estate and sale of personal property, a distinction not found in the statute and, in fact, inconsistent with the statutory definition. *See* § 452.01(2)(d) (covering the sale of "any business, its goodwill, inventory, fixtures or an interest therein"). However, the correctness of the instruction is not before us.

the sale of personal property. This was not improper. The interpretation of this contract presented a question of law and the trial court was not obligated to accept the jury's apparent interpretation of the contract.

## STATUTORY ANALYSIS

The application of § 452.20, STATS., to this case depends upon whether Greenlee was "acting in the capacity of a broker" when he performed the activities for which he seeks compensation. Section 452.01(2), STATS., provides in part:

> "Broker" means any person not excluded by sub. (3), who:
> (a) For another, and for commission, money or other thing of value, negotiates or offers or attempts to negotiate a sale, exchange, purchase or rental of an interest or estate in real estate;
> . . . .
> (d) For another and for commission, money or other thing of value, negotiates or offers or attempts to negotiate a sale, exchange, purchase or rental of any business, its goodwill, inventory, fixtures or an interest therein . . . .

Section 452.01(5m), STATS., provides in part:

> "Negotiate" means to act as an intermediary between the parties to a transaction, including doing any of the following:
> (a) Facilitating or participating in the parties' discussion of the terms of a contract or agreement concerning a transaction.

Section 452.01(10), STATS., provides:

> "Transaction" means the sale, exchange, purchase or rental of, or the granting or acceptance

of an option to sell, exchange, purchase or rent, an interest in real estate, a business or a business opportunity.[7]

■

We conclude that Greenlee was acting as a broker under the definition of that term in § 452.01(2)(a) and (d), STATS. His activities were directed toward finding a buyer for Stockmen's East, which included real estate, equipment and goodwill. By the time Greenlee met with the Ho-Chunk Nation, he was looking for a buyer

---

[7] The definition of broker in § 452.01(2)(a) and (d), STATS., was amended by 1993 Wis. Act 127, §§ 4 and 5, effective October 1, 1994. The prior version of § 452.01(2)(a) and (d) read:

> (a) For another, and for commission, money or other thing of value, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an interest or estate in real estate;
>
> . . . .
> (d) For another and for commission, money or other thing of value, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of any business, its goodwill, inventory, fixtures or an interest therein . . . .

Section 452.01(2)(a) and (d), STATS., 1991-92.

1993 Wis. Act 127, §§ 11 and 13 added subsections (5m) and (10) to the statute. Sections 452.20 and 452.03, STATS., were not changed by 1993 Wis. Act 127.

The trial court applied the statute as amended by 1993 Wis. Act 127, rather than the version in effect at the time Greenlee performed the activities. No party challenges the court's application of the amended statute. Accordingly, we do not address the question of which version of the statute should apply. *See Waushara County v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19, *cert. denied*, 506 U.S. 894 (1992) (Court of Appeals has no duty to consider issues other than those presented to it). However, because the reported cases are all decided under the prior version, we discuss both versions, concluding that Greenlee was a broker under both.

to purchase the property from Farmers, not from him. He provided the Nation with information about the property and the purchase price, answered their questions, and showed the representatives the property. He negotiated a commission with Farmers and Rainbow for providing a buyer who would make an offer on certain terms. He introduced Schuster to Nation representatives and was present at that first meeting. These activities constitute "negotiating" because they constitute acting as "an intermediary between the parties to a transaction" by "[f]acilitating ... in the parties' discussion of the terms of a contract" concerning the sale of real estate and the sale of a business, its goodwill, inventory or fixtures. Section 452.01(5m). At a minimum, these activities constitute an offer or attempt to negotiate such sales.

Although the parties attempted to avoid the statutory prohibition by drafting the contract as they did, the contract confirms that the property for which Greenlee was to provide a buyer is property covered under the statutory definition. The amount of the commission, it is true, is not tied to the value of the real estate. But it is tied to the value of goodwill and equipment, which are covered under § 452.01(2)(d), STATS. More significantly, a condition that Greenlee must meet to earn the commission is to provide a buyer for the whole property, which includes the real estate, goodwill and equipment.

 Greenlee argues that he was not acting as a broker because he planned initially to buy the property himself and so was looking for someone to purchase the property from him. According to Greenlee, the commission was simply for the sale of information about a potential buyer that he had already acquired while

looking for a buyer for himself. Greenlee relies on *Schaller v. Litton Indus., Inc.*, 307 F. Supp. 126 (E.D. Wis. 1969), for the proposition that selling information about business opportunities is not acting as a broker under § 452.01(2), STATS. A federal court decision interpreting a state statute is not binding on this court, although we may consider it for its persuasive value. *See LeClair v. Nat'l Resources Bd.*, 168 Wis. 2d 227, 238, 483 N.W.2d 278, 283 (Ct. App. 1992).

We do not find *Schaller* persuasive authority for Greenlee's position because of significant factual differences and the brevity of analysis. Schaller worked for himself gathering and analyzing information about corporations for the purpose of assessing which corporations would be potential merger partners for other corporations. He approached Litton Industries with the name of a potential merger partner. There never was a written or oral agreement by Litton Industries to compensate Schaller. Schaller had contacts over a period of time with Litton Industries and with the potential merger partner in an effort to bring the two together. There was no merger at that time, but eventually one took place and Schaller sued for compensation. Schaller was not a licensed real estate broker. *Schaller*, 307 F. Supp. at 130.

The *Schaller* court found an implied contract and granted Schaller recovery. *Id.* at 131-33. It concluded that Schaller's activities did not come within the definition of broker in § 136.01(2)(d) and (e), STATS., 1967, the predecessor statute to § 452.01(2), STATS.[8] The court's discussion on this point is brief. The court states that

---

[8] Section 136.01(2)(d), STATS., 1967, is identical to § 452.01 (2)(d), STATS., 1991-92. *See* note 7 for the text of § 452.01(2)(d), 1991-92. Section 136.01(2)(e), 1967, is identical to § 452.01(2) (e), 1993-94, which provides:

Schaller was not involved in negotiations of the actual merger but rather "opened the door to merger discussions by kindling Litton's interest in [the] potential acquiree" and placing them in contact with one another. *Id.* at 134. The court also characterized Schaller as selling information and contacts rather than being hired by one party to find another party. *Id.*

*Schaller* is of limited value for several reasons. First, because the transaction was the merger of two companies rather than the sale of property including real estate, § 452.01(2)(a), STATS., was not involved and the court did not discuss the term "negotiate" in the context of the sale of real estate.[9] Second, there was no statutory definition of "negotiate" at the time *Schaller* was decided, and the court does not explain what it means by the term or why "actual negotiations of any merger" are required by para. (d). Finally, while the distinction between selling information and finding a buyer may be significant on the facts of *Schaller*, it is not a useful distinction in this case. Greenlee entered into a contract with Farmers and Rainbow whereby he would receive a commission if he produced a buyer that made an offer on certain terms. The nature of what he was being paid to do was not changed simply because,

Is engaged wholly or in part in the business of selling business opportunities or good will of an existing business or is engaged wholly or in part in the business of buying and selling, exchanging or renting of any business, its goodwill, inventory, fixtures or an interest therein . . . .

[9] The activities of a business opportunity broker are included in the definition of broker under § 452.01(2), STATS., specifically in paragraphs (d) and (e), and those definitions do not require that some real estate be included in the transaction. *See Chapman Co., Inc. v. Service Broadcasting Corp.*, 52 Wis. 2d 32, 37, 187 N.W.2d 794, 796 (1971).

when he entered into the contract, he had already done the work of finding a potential buyer and persuading the buyer to make such an offer.

Even if we did apply the version of the statute in effect in 1992, we would reach the same conclusion. Although "negotiate" was not defined in that version, case law had interpreted "negotiate" in the context of real estate brokers' listing contracts to mean "that the efforts of the broker to interest a prospect must have proceeded to the point where the prospect would be considered a *likely purchaser*." *Munson v. Furrer*, 261 Wis. 634, 639, 53 N.W.2d 697, 699 (1952) (emphasis in original). This was the definition of negotiate used by the court in *George Nangen & Co. v. Kenosha Auto Transp. Corp.*, 238 F. Supp. 157 (E.D. Wis. 1965), in deciding whether an individual had "offer[ed] or attempt[ed] to negotiate a sale, exchange, purchase or rental of any business, its good will, inventory, fixtures or an interest therein" under § 136.01(2)(d), STATS., 1965. In *George Nangen & Co.*, the plaintiff had entered into an agreement with the defendant to find a buyer willing to purchase its business on stated terms. The court concluded this constituted an attempt to negotiate a sale under § 136.01(2)(d), 1965.

We find the reasoning in *George Nangen & Co.* persuasive. We conclude that Greenlee was "attempt[ing] to negotiate a sale" under both § 452.01(2)(a) and (d), STATS., 1991-92, because he made efforts to interest a prospective buyer in the Stockmen's East property to the point where that prospect, the Ho-Chunk Nation, was a likely purchaser.

Greenlee argues that the purpose of § 452.20, STATS., is to prevent the citizens of this state from being defrauded "through the activities of so-called real-estate brokers, many of whom were not citizens of this

state and who came here for the purpose of exploiting its people," quoting *Payne v. Volkman*, 183 Wis. 412, 419, 198 N.W. 438, 440 (1924). According to Greenlee, this purpose is not served by enforcing the statute in this case because the other parties to the contract knew he was not a licensed broker. We reject this argument. Section 452.20 plainly prohibits a suit to collect a commission for activities defined in § 452.01, STATS. This prohibition is not conditioned on the "innocence" or lack of sophistication of the other contracting party, and we will not read such a condition into the statute.

## ESTOPPEL AND UNJUST ENRICHMENT

Greenlee contends that even if there were a violation of § 452.20, STATS., Farmers and Rainbow should be estopped from raising that as a defense because Schuster—the owner of Rainbow, which was Farmers' agent—drafted the contract. However, where a contract is void because of failure to comply with clear, legislative requirements, the legal consequences of the statute cannot be avoided by estoppel. *Grams v. Melrose-Mindoro Joint Sch. Dist. No. 1*, 78 Wis. 2d 569, 578, 254 N.W.2d 730, 735 (1977). Since Greenlee was acting as a broker as defined by the statute, without a license, the contract for a commission for those activities is void from its inception. *Kemmerer v. Roscher*, 9 Wis. 2d 60, 64, 100 N.W.2d 314, 317 (1960). Estoppel is not available to avoid the effect of the statute.

Moreover, where a plaintiff seeks equitable relief based on reliance principles, that reliance must be reasonable. *Grams*, 78 Wis. 2d at 580, 254 N.W.2d at 736. Greenlee acknowledged that he knew he could not get a

commission for selling real estate without a license and that is why he initially thought of buying and reselling the property. Greenlee also acknowledged that Schuster told him he could not be paid for finding a buyer for the property because he was not licensed. It is unfortunate that Greenlee relied on Schuster's representation that the commission could become lawful simply by wording the contract to tie the amount of the commission to the personal property and leaving every other aspect of the transaction unchanged. However, we conclude that Greenlee's reliance on Schuster's mistaken view of the law was not reasonable. *See Grams*, 78 Wis. 2d at 580, 254 N.W.2d at 736 (reliance on superintendent's misstatement of law by teacher was not reasonable; responsibility to keep credentials in order was teacher's responsibility and superintendent could not "waive" law).

Finally, Greenlee argues we should remand to the trial court for a determination on whether he is entitled to damages on his unjust enrichment claim. We decline to consider this issue. Greenlee's complaint contained an unjust enrichment claim as well as a breach of contract claim. In Rainbow's and Schuster's brief in support of their motion for summary judgment, they argued that since it was undisputed that the contract between Greenlee, Rainbow and Farmers was signed, Greenlee did not have a claim for unjust enrichment. The doctrine of unjust enrichment does not apply where the parties have entered into a contract. *Continental Casualty Co. v. Wisconsin Patients Compensation Fund*, 164 Wis. 2d 110, 118, 473 N.W.2d 584, 587 (Ct. App. 1991). Greenlee's brief in response conceded that "[u]nder the facts as developed in this case, Greenlee does not have an implied contract [unjust enrichment] claim." The trial court therefore

671

dismissed the unjust enrichment claim. Greenlee now contends that since the trial court's ruling that the contract was void was "unexpected," he did not have a chance to argue that the defendants' brief on summary judgment judicially estopped them from taking that position or for asking for a reinstatement of his unjust enrichment claim.

We generally do not consider issues not raised before the trial court. *See County of Columbia v. Bylewski*, 94 Wis. 2d 153, 171, 288 N.W.2d 129, 138-39 (1980). When Farmers raised the issue of the contract's invalidity in its brief in support of motions after verdict and ·at the hearing on that motion, Greenlee did not argue that it was judicially estopped from doing so or ask for leave to reinstate his unjust enrichment claim. Nor did he move for reconsideration on these grounds when he received the court's written decision ruling that he could not recover compensation for his services because he was acting as a broker. Greenlee provides no authority or reasoned argument for the proposition that he can recover on an unjust enrichment claim when a contract for a commission is not enforceable under § 452.20, STATS. Under these circumstances, we see no compelling reason for addressing these issues on appeal.

*By the Court.*—Judgment affirmed.