Wayne A. GREENLEE, Plaintiff,

v.

RAINBOW AUCTION/REALTY CO., INC., Defendant-Appellant,

FARMERS & MERCHANTS BANK, Defendant-Third-Party Plaintiff-Respondent,

v.

Jon SCHUSTER, Third-Party Defendant-Appellant.†

Court of Appeals

*No. 97–1483. Submitted on briefs February 11, 1998.—Decided April 23, 1998.*

(Also reported in 582 N.W.2d 93.)

†Petition to review denied.

745

747

On behalf of the third-party defendant-appellant, the cause was submitted on the briefs of *William P. Skemp* of *William Skemp Law Firm, S.C.* of La Crosse.

On behalf of the defendant-third-party plaintiff-respondent, the cause was submitted on the brief of *William T. Curran* of *Curran, Hollenbeck & Orton, S.C.* of Mauston.

Before Vergeront, Roggensack and Nichol,[1] JJ.

ROGGENSACK, J. Jon Schuster, a real estate broker, and Rainbow Auction/Realty Co., Inc., his agency, appeal summary judgment which denied their claim for fees, but held them liable for the defense costs incurred by Farmers & Merchants Bank, their client, in defending an action for a commission claimed to be due under a contract drafted by Schuster. They also appeal the award of prejudgment interest to the Bank on a portion of a commission which Rainbow eventually agreed to return. Because we conclude that a real estate broker who drafts an illegal contract violates the standard of care due to his client, and that any defense costs relating to claims made by a third party under the illegal contract are a proximate result of that breach of duty, we affirm the award of attorney's fees and costs to the Bank and the denial of fees and costs to Schuster and Rainbow. Additionally, for the reasons discussed within, we also affirm the interest award to the Bank.

## BACKGROUND

The Farmers & Merchants Bank acquired a former truck stop property known as Stockmen's East through a foreclosure. In May of 1992, Wayne Greenlee, who

---

[1] Circuit Judge Gerald Nichol is sitting by special assignment pursuant to the Judicial Exchange Program.

had owned and operated other truck stops in the Mid-west, learned of the foreclosure, and contacted senior vice-president David Myer regarding the property. Greenlee initially hoped to be able to lease Stockmen's East with an option to purchase, get the truck stop up and running again, and then sell the business as a going concern. After Myer explained that the Bank would require a purchase price of at least $600,000, Greenlee began looking for others to purchase the property. He contacted the Ho-Chunk Nation, and quoted them a price of $825,000, suggesting it as a possible casino site. At about the same time, the Bank con-tracted with real estate broker Jon Schuster of the Rainbow Auction/Realty Co., Inc. to list the property. The listing contract required the Bank to refer all inquiries about the property to Schuster and Rainbow.

In September of 1992, Greenlee told Myer that he had found a potential buyer, but that he would not divulge the name until he had a written agreement for a commission on the sale. Myer told Greenlee that Rainbow had the exclusive right to sell the property, and that Greenlee would have to deal with Schuster about any fee he hoped to obtain. Greenlee met with Schuster, and asked for $100,000 of the sales proceeds in exchange for the name of the potential buyer he had found. Schuster, realizing that Greenlee could not law-fully collect a real estate commission because he was not a licensed broker, wrote an agreement which sepa-rated Stockmen's assets into real and personal property, and purported to give Greenlee a commission on the personal property, so long as the ultimate purchase price of the entire parcel exceeded $800,000. After the parties signed the contract, Greenlee intro-duced Schuster and the Ho-Chunk representatives. The Bank and Ho-Chunk eventually negotiated a clos-

751

ing price of $725,000,[2] and thereafter, the Bank refused to pay Greenlee.

Greenlee sued Rainbow and the Bank, seeking to recover the commission which he alleged was due. The Bank tendered its defense to Rainbow and Schuster, but they refused to accept it. Thereafter, the Bank brought Schuster in as a third-party defendant and cross-claimed against Rainbow. It claimed for indemnification, if Greenlee's breach of contract claim was successful against the Bank, and for its attorney's fees and costs incurred in defending against Greenlee's action, regardless of the outcome.

In a prior appeal, we determined that § 452.20, STATS., barred Greenlee's action because he was attempting to enforce an illegal contract by seeking a commission on the sale of real estate without a realtor's license.[3] The matter then returned to the circuit court to determine whether Schuster and Rainbow were liable for the Bank's attorney's fees and costs incurred in its defense of Greenlee's claim. At that point in the proceedings, the Bank amended its pleadings against Schuster and Rainbow, claiming they were negligent during the course of their representation in the sale of Stockmen's East and demanding the return of the portion of the commission which related to land that was not sold, and five percent interest thereon. Schuster and Rainbow then claimed against the Bank for their

---

[2] The renegotiation apparently occurred after Schuster had revealed to Ho-Chunk that Greenlee was to receive a $100,000 fee, and certain contamination problems were discovered on the land, prompting Ho-Chunk to limit its purchase to the one acre of the thirty-eight-acre property on which the building was located.

[3] *Greenlee v. Rainbow Auction/Realty Co.*, 202 Wis. 2d 653, 553 N.W.2d 257 (Ct. App. 1996).

attorney's fees and costs incurred in Greenlee's suit. Later, they amended their response to the amended third-party complaint/cross-claim. All parties filed cross-motions for summary judgment. The circuit court ruled in favor of the Bank. Rainbow and Schuster appeal.

## DISCUSSION

### Standard of Review.

It is well established that this court applies the same summary judgment methodology as that employed by the circuit court. Section 802.08, STATS.; *State v. Dunn*, 213 Wis. 2d 363, 368, 570 N.W.2d 614, 616 (Ct. App. 1997). We first examine the amended third-party complaint/cross-claim to determine whether it states a claim, and then we review the third-party answer/reply to determine whether it joins issue. *Id*. We also examine Schuster and Rainbow's claims and the Bank's responses in a similar fashion. If we conclude that the pleadings are sufficient to join an issue of law or fact, we examine the moving party's affidavits to determine whether they establish a *prima facie* case for summary judgment. *Id*. at 368, 570 N.W.2d at 617. If they do, we look to the opposing party's affidavits to determine whether there are any material facts in dispute which require a trial. *Id*.

Whether attorney's fees incurred in third-party litigation may be awarded as damages in a negligence action is a mixed question of fact and law. *Meas v. Young*, 142 Wis. 2d 95, 101, 417 N.W.2d 55, 57 (1987). Where the material facts are undisputed, we review the conclusion of law based on those facts, *de novo*. *See*

*Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979).

## Damages.

Applying the summary judgment methodology, we conclude that the amended third-party complaint/cross-claim states claims for relief[4] because it alleges that the Bank retained Schuster and Rainbow as real estate professionals for the purpose of selling Stockmen's East and that executing the document drafted by Schuster, which caused Greenlee's complaint to be filed against the Bank, was part of their representation. The pleadings further claim for the Bank's attorney's fees and costs incurred in defending against Greenlee's suit. The amended answer/reply is a general denial of liability to the Bank. In addition, by incorporation of the original answer of Schuster, it raises the defense of contributory negligence, failure to state a claim and failure to mitigate. Schuster and Rainbow also claimed for legal fees incurred as a result of the Bank's actions and they claim against the Bank

---

[4] While the allegations in the amended third-party complaint/cross-claim, liberally construed, state a claim for negligence, the prayer for relief requests "indemnification." Indemnification may be had by contract, as one does when one purchases liability insurance, or it may be equitable, when joint tortfeasors are liable to a third party and the law concludes that, as between the tortfeasors, one should bear the entire obligation. RESTATEMENT (SECOND) OF TORTS § 886B (1977). *Brown v. LaChance*, 165 Wis. 2d 52, 64, 477 N.W.2d 296, 302 (Ct. App. 1991). If a legal obligation for payment had been due Greenlee, a claim for indemnification could have been made; however, because the attorney's fees sought in this action are not an obligation to a third party, but rather, a direct damage to the Bank, indemnification does not lie. *Id.*

for them. The Bank denied their claims. Therefore, our review assures us that issue has been joined.

Damages for negligence encompass attorney's fees generated in defending against a suit by a third party that resulted from the breach of the requisite duty of care. *Meas*, 142 Wis. 2d at 101–02, 417 N.W.2d at 57 (citing *Weinhagen v. Hayes*, 179 Wis. 62, 65, 190 N.W. 1002, 1003 (1922)). The rule set out in *Meas* requires an examination of the facts and the law. *Meas*, 142 Wis. 2d at 101, 417 N.W.2d at 57. The factual part of the determination is establishing what the realtors did, and the legal part is deciding whether their acts violated the standard of care due to the principal. *Id.* at 102, 417 N.W.2d at 57–58. Here, it is not disputed that Schuster drafted the agreement which was a cause of Greenlee's lawsuit. It is also not disputed that Schuster was the agent of Rainbow. Therefore, the questions which remain are whether Schuster's action was a breach of the standard of care owed to the Bank and whether Schuster and Rainbow have raised a potentially meritorious affirmative defense.

To begin our analysis, we note that § 452.19, STATS., prohibits a licensed broker from paying "a fee or commission or any part thereof . . . for a referral or as a finder's fee to any person who is not licensed or registered" as a real estate broker. We concluded during the first appeal that Schuster drafted a contract to pay a commission to a person who was not appropriately licensed or registered. *Greenlee v. Rainbow Auction/Realty, et al.*, 202 Wis. 2d 654, 665, 553 N.W.2d 257, 262 (Ct. App. 1996). When the legislature proscribes particular acts that shall not be done, the statute may be interpreted as establishing a standard of care,

755

the deviation from which constitutes negligence *per se* toward the class of persons the statute was meant to protect. *McGarrity v. Welch Plumbing Co.*, 104 Wis. 2d 414, 418, 312 N.W.2d 37, 39 (1981). The regulations pertaining to licensed real estate professionals contained within ch. 452 were enacted under the state's police power, to protect buyers and sellers of real estate. *See Hilboldt v. Wisconsin Real Estate Brokers' Bd.*, 28 Wis. 2d 474, 481, 137 N.W.2d 482, 487–88 (1965). Therefore, the Bank was a member of the class of persons which § 452.19 was enacted to protect.

Additionally, Schuster was required to comply with the statutes governing real estate transactions and his license was subject to discipline if he did not do so. Section 452.14(3)(j), STATS. Therefore, without specifically delineating here all of the boundaries of a real estate broker's standard of care, we conclude, as a matter of law, that Schuster, as a real estate broker who drafted a fee-splitting agreement contrary to the prohibition of §§ 452.19 and 452.20, STATS., violated the standard of care which he owed to the Bank and he is liable[5] for any damages for which his act was a cause,[6] absent a potentially meritorious affirmative defense.

---

[5] Citing *State ex rel. Reynolds v. Dinger*, 14 Wis. 2d 193, 109 N.W.2d 685 (1961), the Bank argues that by drafting the contract with Greenlee, Schuster was practicing law without a license; and therefore, he should be held to the same professional standards as an attorney who drafts a contract on behalf of a client. Other jurisdictions have so held. *See Wright v. Langdon*, 623 S.W.2d 823, 826 (Ark. 1981) (holding it is proper to do so "to deter those who might be otherwise tempted to profess a competence they have no right to claim"). However, in light of our discussion above, we decline to analyze this argument.

## Affirmative Defenses.

Having concluded that the Bank did state proper claims against Rainbow and Schuster for defense costs as damages based on Schuster's breach of duty by drafting an illegal contract, we turn our attention to whether the realtors have presented any allegations which would create a material issue of fact entitling them to trial on any affirmative defense. Rainbow and Schuster argue the defenses of ratification, unclean hands and equity on appeal.[7] Schuster avers that Myer told him not to lose Greenlee and his buyer, while knowing that Greenlee was not a licensed broker. In other words, while Schuster does not deny having drafted the illegal contract, he maintains that the Bank was so involved in the process that it should share the consequences.

### 1. Ratification.

Rainbow and Schuster contend that by the Bank's consent to the transaction, it ratified the contract with Greenlee; therefore, the Bank's actions were a superseding cause of its own damage. However, as the circuit court correctly pointed out, the doctrine of ratification does not apply to a contract which is void at its inception. *Perry v. Milwaukee Bd. of Sch. Directors*, 131 Wis.

---

[6] Greenlee's complaint was based on the agreement Schuster drafted. That the agreement was a cause of the lawsuit by Greenlee is not disputed.

[7] Schuster raised the additional affirmative defense of contributory negligence in his pleadings, but he does not develop that defense in his brief. Therefore, we do not address it in our decision. *Truttschel v. Martin*, 208 Wis. 2d 361, 369, 560 N.W.2d 315, 319 (Ct. App. 1997).

2d 380, 385, 388 N.W.2d 638, 640 (Ct. App. 1986). We have already held this contract is illegal; therefore, it is void from its inception. *Greenlee*, 202 Wis. 2d at 670, 553 N.W.2d at 264. The ratification defense is no shield against liability for Schuster and Rainbow.

### 2. *Equitable Relief.*

■

The equitable doctrines of unclean hands and the general plea to do equity were also argued as affirmative defenses to the Bank's claim. We note that just because the Bank was aware that Greenlee was not a broker, that fact standing alone provides no basis for either equitable defense. There is nothing in the record which shows the Bank was aware of the legal consequences of Greenlee's lack of a real estate license, in terms of the commission agreement. Schuster does not claim to have disclosed any information regarding the prohibition against fee-splitting with non-brokers. Furthermore, whether to grant equitable relief lies in the sound discretion of the circuit court. *Prince v. Bryant*, 87 Wis. 2d 662, 674, 257 N.W.2d 676, 681 (1979). The record clearly shows the circuit court considered the defenses, the factual bases for which were not disputed. In its written decision, it clearly stated the reasons for the exercise of its discretion. Therefore, it did not erroneously exercise its discretion when it determined that no equitable defenses lie in this case.

### Rainbow and Schuster's Claims.

■

Rainbow and Schuster's claims for payment of their attorneys' fees from the Bank fail for lack of a theory which could provide their recovery. They indi-

758

cated attorney's fees as an issue for the appeal on their docketing statement, but they developed no argument under which to recover those fees in their briefs. Therefore, we conclude they have abandoned this claim. *See Fritz v. McGrath*, 146 Wis. 2d 681, 686, 431 N.W.2d 751, 753 (1988).

**Pre-Judgment Interest.**

Rainbow agreed to return that portion of the commission which the Bank had paid for the thirty-seven acres of property on which the Ho-Chunk never closed, but disputes that the Bank was also entitled to interest on the unearned commission. We disagree. The excess commission was a liquidated obligation upon which the statutory five percent interest began to accrue from the moment when the Bank's demand for payment was made. Section 138.04, STATS.; *Estreen v. Bluhm*, 79 Wis. 2d 142, 158–59, 255 N.W.2d 473, 482 (1977). The circuit court determined that moment occurred when the Bank filed its amended third-party complaint/cross-claim on April 19, 1995. We agree and conclude that five percent interest is due on the retained commission from April 19, 1995 until it was returned to the Bank.

## CONCLUSION

Because we conclude that there are no material facts in dispute and that Schuster and Rainbow are liable for the Bank's attorney's fees and costs incurred in Greenlee's suit against the Bank, as well as five percent interest on the unearned commission, as a matter of law, we affirm the judgment of the circuit court in all respects.

*By the Court.*—Judgment affirmed.